**JUSTIN M. BAXTER**
Oregon State Bar ID Number 99217
justin@baxterlaw.com
Baxter & Baxter LLP
8835 S.W. Canyon Lane, Suite 130
Portland, Oregon 97225
Telephone (503) 297-9031
Facsimile (503) 291-9172
      Attorney for Plaintiff April Hettman

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| APRIL HETTMAN,<br>formerly April Manning,<br><br>          Plaintiff,<br><br>   v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br>a foreign limited liability company, TRANS<br>UNION LLC, a foreign limited liability company,<br><br>          Defendants. | Case No. CV 08-1174-AC<br><br>PLAINTIFF'S MEMORANDUM IN<br>SUPPORT OF MOTION FOR<br>SANCTIONS<br><br>Fed. R. Civ. Proc. 37 |

### INTRODUCTION

Plaintiff April Hettman moves for an order imposing sanctions against defendant Equifax Information Services, LLC, pursuant to Fed. R. Civ. Proc. 37. Sanctions are appropriate here because Equifax has repeatedly failed to participate in discovery, including failing to appear at properly noticed depositions on four separate occasions. Equifax's conduct is consistent with past litigation tactics, in which other courts (as well as this Court) have warned Equifax about its

Page 1     PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS

misconduct, and have imposed sanctions.  Equifax has not learned the lesson of those sanctions, and plaintiff is prejudiced by Equifax's flouting of the rules.  Plaintiff seeks entry of default against Equifax, pursuant to Fed. R. Civ. Proc. 37(d)(3) and Fed. R. Civ. Proc. 37(b)(2)(A)(vi). This is a severe sanction, but one which is supported by the law Equifax's outrageous misconduct in this case.

<u>BACKGROUND</u>

Plaintiff has been trying to schedule Equifax's deposition for nearly six months.  The parties initially scheduled the Fed. R. Civ. Proc. 30(B)(6) deposition of Equifax's corporate representative for January 8, 2010.  On the evening of January 7, 2010, Equifax produced to plaintiff 285 pages of new documents, including hundreds of pages of "frozen scans." Frozen scans are essentially monthly snapshots of the information in a particular credit file.  Frozen scans are extremely important documents in this type of case, because they help to explain apparent deletion and reappearance of false accounts from a particular consumer's credit reports. They are extremely time consuming to review because they are heavily coded, and must be compared to similar records in chronological order.  In this case, there were at least four separate credit files or "fragment files" that were associated with the plaintiff, Ms. Hettman.  Baxter Decl., ¶ 2.

Due to snow in Atlanta, Georgia, where the witness and Equifax's national counsel are located, the deposition was cancelled.  The parties rescheduled the deposition to take place on February 4, 2010.  On the eve of the depositions, on February 3, 2010, defendant Equifax produced 178 pages of additional frozen scans to plaintiff's counsel.  Baxter Decl., ¶ 3.

The parties convened the deposition on February 4, 2010.  Equifax produced Lisa Willis as its corporate representative, and plaintiff deposed her on the documents that had been

previously produced in the case.  Equifax stipulated to a continuance of that deposition in light of the late produced documents.  Additionally, during the first deposition, Ms. Willis could not answer questions about topics set forth in the deposition notice.  The witness indicated that a separate corporate representative from the systems department would have to be designated to answer certain questions.  Baxter Decl., ¶ 4.

The Court granted an extension of the discovery cut off in order that plaintiff could complete the continuation of Ms. Willis's deposition, as well as to conduct a supplemental deposition of a witness from the systems department.  Baxter Decl., ¶ 5.

Plaintiff requested dates from Equifax's counsel to convene the two depositions.  On February 26, 2010, plaintiff's counsel emailed Equifax's counsel "Can I get some availability for the continuation depo's in this case?"  There was no response.  Baxter Decl., ¶ 6.

On March 12, plaintiff's counsel emailed Equifax's counsel "I have not received any dates for Equifax's depositions in this case.  If I can't get some mutually agreeable dates by Monday or Tuesday, I'll need to notice deps.  Let me know."  There was no response.  Baxter Decl., ¶ 7.

Having received no responses to the prior inquiries, plaintiff noticed the depositions.  On March 18, 2010, plaintiff served deposition notices for April 8, 2010, the last day of discovery under the scheduling order in effect at that time.  The notices were sent via first class mail and email.  Baxter Decl., ¶ 8.

On April 7, 2010, Equifax's counsel called plaintiff's counsel and requested that the depositions be rescheduled.  Because the discovery cut off was the next day, plaintiff could not agree unless the discovery deadline was extended.  Plaintiff's counsel consented to the filing of an unopposed motion for extension of the discovery deadline; however, made clear that if the

motion was not granted by the next day (or that there was at least some assurance that the motion would be granted), plaintiff intended to go forward with the depositions as noticed on April 8, 2010. The motion was filed, but the Court did not grant the motion. Rather, the Court scheduled a hearing on the motion for the following week. Consequently, the depositions remained on the calendar as noticed. Baxter Decl, ¶ 9.

Plaintiff's counsel prepared for the depositions, and retained a court reporter in Atlanta to transcribe the proceedings. On the morning of April 8, 2010, the court reporter called plaintiff's counsel to report that she was at the King & Spalding offices, but no one there knew of any depositions in this case. Plaintiff's attorney called Equifax's attorney who stated that no witness would be produced for deposition in light of the pending motion for extension. Baxter Decl., ¶ 10.

The following week, the Court allowed the motion for extension, but made clear that no further extensions would be granted in the case. Plaintiff's counsel emailed Equifax's counsel on April 15, 2010 and asked "Can you provide me with some available dates for Lisa Willis and Phyllis Dorman?" There was no response. Baxter Decl., ¶ 11. On April 20, 2010, plaintiff's counsel emailed Equifax's counsel "Can I get some dates for Willis & Dorman deps?" There was no response. Baxter Decl., ¶ 12.

Having received no response, plaintiff's counsel noticed the depositions of Ms. Willis and Ms. Dorman for May 20, 2010 and May 21, 2010. Plaintiff transmitted the notices by mail and email. Plaintiff's counsel emailed Equifax's attorneys "I haven't heard back from you on dates for depos in this case, so I am noticing them for late May. I am open to moving them to accommodate you and your witnesses. Also please find attached plaintiff's second interrogatories." There was no response. Equifax did not object to the deposition dates, the

substance of the notices, or respond to the interrogatories.  Baxter Decl., ¶ 13.

On May 4, 2010, plaintiff's counsel again emailed Equifax's counsel "I'm following up on the several voicemails and emails I've left for you in the last couple of weeks.  Can you confirm your witnesses' availability for these depositions?  I am open to resetting the dates (within the discovery cutoff), but I don't want to do another round of wasted depo prep.  Please advise."  There was no response.   Baxter Decl., ¶ 14.

On May 8, 2010, plaintiff's counsel emailed Equifax's counsel "Can I get a response to my recent emails and phone messages?"  Baxter Decl., ¶ 15.  On May 11, 2010, plaintiff's counsel emailed Equifax's counsel "I have been trying to reach you for several weeks.  Please give me a call."  There was no response.  Baxter Decl., ¶ 15.

On May 14, 2010, plaintiff's counsel emailed Equifax's counsel "I have not heard from you in response to my repeated emails and phone messages.  I plan to proceed with the depositions noticed for next Thursday and Friday."  There was no response.  Baxter Decl., ¶ 16.

On May 18, Equifax's counsel called plaintiff's counsel, requesting that the depositions again be rescheduled, purportedly for the purpose of pursuing settlement negotiations.  Equifax's attorney assured plaintiff's counsel that if settlement was not reached, the depositions would take place the week of June 1, 2010, i.e., two weeks later.  Plaintiff's counsel agreed.  No settlement negotiations occurred.  Baxter Decl., ¶ 17.

On May 20, 2010, plaintiff's counsel emailed Equifax's counsel "If this case isn't going to settle, I'd like some dates on the calendar for Margaret Leslie and Lisa Willis.  As we discussed I am generally available for two half days the week of 6/1.  I would like to start at noon your time.  Please let me know your witnesses' availability."  There was no response. Baxter Decl., ¶ 18.

On May 24, 2010, plaintiff's counsel emailed Equifax's counsel "I haven't received any new dates on these depositions from you, nor have I heard whether Equifax accepts our settlement offer. I am going to notice the depositions for next Tuesday and Thursday beginning at noon your time. I'm assuming based upon our phone conversation that Equifax will not object based upon the week's notice. If you have alternate dates for next week, please let me know by the end of the day." There was no response. Baxter Decl., ¶ 19.

At the end of the Atlanta business day on May 24, 2010, plaintiff sent deposition notices to Equifax's attorneys by mail and email. Plaintiff's counsel emailed Equifax's attorneys "Hard copies [of the deposition notices] to follow by mail. My intent here is to depose Margaret Leslie on Tuesday and Lisa Willis on Thursday." There was no response. Baxter Decl., ¶ 20.

On May 26, 2010, plaintiff emailed Equifax's counsel "The responses to the second interrogatories were due yesterday. Could you email me the responses so that I can have them in advance of next week's depositions?" There was no response. Baxter Decl., ¶ 21. On May 27, 2010, plaintiff's counsel emailed Equifax's counsel "Can I get those [interrogatory responses] by email today?" There was no response. Baxter Decl., ¶ 21.

On May 28, 2010, plaintiff's counsel emailed Equifax's counsel "Following up the voicemail I just left. Please email me with the call in number for Tuesday's deposition of Margaret Leslie. I have noticed the deposition to start at noon your time." There was no response. Baxter Decl., ¶ 22.

On May 31, 2010, plaintiff's counsel emailed Equifax's counsel "Since we have not spoken on this case since 5/18, I am assuming that we are going forward with Margaret Leslie's deposition tomorrow and Lisa Willis's deposition on Thursday. The court reporter will be at your office at noon both days." There was no response. Baxter Decl., ¶ 23.

Plaintiff's counsel prepared for the deposition.  On June 1, 2010, the day noticed for Ms. Leslie's deposition, the court reporter again appeared at the King & Spalding offices.  Plaintiff's attorney emailed defendant's attorney "Can I get a call in number for today?"  **For the second time in this case**, Equifax failed to produce any witnesses.  Baxter Decl., ¶ 24.  Equifax's attorney called plaintiff's attorney and stated that she had mistakenly calendared the depositions for Thursday and Friday of that week.  Though that is not consistent with the deposition notices or the series of emails in the weeks before the deposition, plaintiff's counsel agreed to reschedule Ms. Leslie's deposition for Friday, June 4, 2010, or possibly Monday, June 7, 2010.  Plaintiff's counsel has multi-day depositions scheduled in two other cases the following two weeks and could not delay the depositions any longer within the discovery cut off.  The parties did not discuss rescheduling Ms. Willis's deposition.  Baxter Decl., ¶ 25.

The Court convened oral argument on plaintiff's motion to compel responses to the overdue interrogatories on June 1, 2010.  During that hearing, the parties repeatedly confirmed that Ms. Willis's deposition was going forward on Thursday, June 3, 2010.  Baxter Decl., ¶ 26.

On June 2, 2010, plaintiff's counsel emailed Equifax's counsel "I have not heard from you regarding a new deposition date for Margaret Leslie.  When we spoke on Tuesday, you indicated that you had mistakenly calendared these depositions for Thursday and Friday of this week.  Accordingly, I am issuing a Third Amended Notice of Deposition for Margaret to start at your office at noon your time on Friday, June 4.  * * *  I still have not heard back from you on my earlier emails and voicemails requesting a call-in number for tomorrow's deposition of Lisa Willis.  Please make sure she has a complete copy of all of the EIS documents, including all three sets of scans, as well as plaintiff's documents."  There was no response. Baxter Decl., ¶ 27.

On June 3, 2010, Equifax's counsel emailed plaintiff's counsel and inquired whether

Friday, June 4 and Monday, June 7, 2010 were still available, ostensibly for the purpose of rescheduling Ms. Leslie's deposition which had not taken place on June 1, 2010.[1]  Plaintiff's counsel responded via email "I am available tomorrow, and in fact I noticed Margaret Leslie for deposition tomorrow at noon your time.  I still intend to take Lisa Willis's deposition today, and the court reporter just called to say she is at your office now."  Baxter Decl., ¶ 28.

On June 3, 2010, the court reporter appeared at the King & Spalding offices.  **For the third time in this case**, Equifax failed to produce a witness for a noticed deposition, not having made any objection to the deposition dates.  Plaintiff's counsel dismissed the court reporter.  Baxter Decl., ¶ 29.

The morning of June 4, 2010, Equifax's attorney emailed plaintiff's attorney and inquired about rescheduling Ms. Leslie's deposition.  Plaintiff's attorney responded via email "Sorry, I don't have that time slot anymore on Monday.  Are you producing a witness today or should I call off the court reporter?  If Margaret is ready to go, I need a call in number."  Baxter Decl., ¶ 30.

On June 4, 2010, the court reporter appeared at the King & Spalding offices.  **For the fourth time in this case**, Equifax failed to produce a witness for a noticed deposition.  Plaintiff's counsel dismissed the court reporter.  Had Equifax's counsel responded to the earlier email that morning, plaintiff could have at least called off the court reporter, and avoided incurring yet another no-show fee.  Baxter Decl., ¶ 31.

\\\ \\\ \\\

\\\ \\\ \\\

---

[1] Plaintiff has redacted the text of the email from Equifax's counsel in light of the confidentiality notice.

<u>ARGUMENT</u>

A.  <u>Standard for Motion for Sanctions.</u>

The Court is authorized to impose sanctions against a party that fails to appear for its own

deposition.  Fed. R. Civ. Proc. 37(d) provides in pertinent part:

> (A) Motion; Grounds for Sanctions. The court where the action is pending may,
> on motion, order sanctions if:

> (i) a party or a party's officer, director, or managing agent — or a person
> designated under Rule 30(b)(6) or 31(a)(4) — fails, after being served with proper
> notice, to appear for that person's deposition; or

>                                            * * *

> (3) Types of Sanctions.

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead
> of or in addition to these sanctions, the court must require the party failing to act,
> the attorney advising that party, or both to pay the reasonable expenses, including
> attorney's fees, caused by the failure, unless the failure was substantially justified
> or other circumstances make an award of expenses unjust.

Fed. R. Civ. Proc. 37(d)(3) permits the Court to impose specified sanctions even without

a prior motion to compel, or disobedience of a court order.  The available sanctions are the same

as set forth under Fed. R. Civ. Proc. 37(b)(2)(A)(i)-(vi), which provides in pertinent part:

> (i) directing that the matters embraced in the order or other designated facts be
> taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated
> claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) **rendering a default judgment against the disobedient party** . . . ."
> (Emphasis added)

In this case, plaintiff seeks an order of default judgment.  Before ordering default judgment against a party for vexatious litigation tactics, the Court considers:  "(1) the existence of extraordinary circumstances and the presence of willfulness, bad faith, or fault by the offending party; (2) the efficacy of lesser sanctions; and (3) the relationship or nexus between the misconduct and the matters in controversy."  Estrada v. Speno & Cohen, 2001 U.S. App. LEXIS 10697, 49 Fed. R. Serv. 3d (Callaghan) 50 (9th Cir., March 30, 2001), citing, Lujan v. Hughes Aircraft Co., 67 F.3d 242, 247 (9th Cir. 1995).  In addition, as optional considerations, the Court may also assess the prejudice to the victim of the misconduct.  Id.

B.  Willfulness, Bad Faith, or Fault.

Depositions in this case follow a regular, almost predictable pattern.  Plaintiff's counsel would request available dates for depositions.  After receiving no response, plaintiff would notice depositions.  Equifax would not object or even comment on the noticed dates.  In the days and weeks before the noticed deposition date, plaintiff's counsel would confirm the noticed deposition date in emails and voicemails.  On the day of the deposition, or just before the date of deposition, Equifax's counsel would advise plaintiff's counsel that there was no witness for the noticed deposition.  Four different times in this case plaintiff noticed a deposition and had a court reporter at the King & Spalding offices, and four times Equifax produced no witness to deposed.

The Court explicitly put Equifax on notice that continued failure to participate in discovery would be met with significant consequences.  On June 1, 2010, the Court convened oral argument on plaintiff's motion to compel responses to interrogatories and admonished Equifax's attorney that compliance with the discovery rules were not optional in this district.

The Court warned Equifax's attorney: "So I am just going to say that if your client is not sufficiently attentive to the requirements of complying with the rules in federal court for the discovery of information, I can remedy that." Ex. 35 to Baxter Decl., p. 22

And yet, just two days later, on June 3, 2010, in spite of the Court's admonition, Equifax failed to produce Lisa Willis for her deposition. Plaintiff confirmed the deposition date in four separate emails. Equifax's counsel did not respond or object. There was no question on the part of the parties that Ms. Willis's deposition was going forward. See, e.g., Ex. to Baxter Decl., p. 21, 23, 25.

The following day, on June 4, 2010, Equifax again failed to produce Margaret Leslie for deposition for a second time in a week. Ms. Leslie had already failed to appear for her deposition on June 1, 2010. At the time, Equifax's attorney explained that she had mistakenly calendared the depositions for Thursday and Friday of that week. As a courtesy to Equifax, plaintiff's counsel re-noticed Ms. Leslie's deposition for Friday, June 4, 2010. Plaintiff's counsel confirmed this in two different emails. Defendant did not respond or object. On the day of the June 4, 2010 deposition, Equifax failed to produce Ms. Leslie for her deposition.

This conduct is coupled with Equifax's pattern of abusive discovery tactics in other parts of this case. Two times Equifax produced hundreds of pages of new documents the night before a deposition was scheduled to take place. In the one deposition that has taken place, the witness designated by Equifax was not able to answer questions within the scope of the deposition notice, necessitating a second deposition (which has never taken place). As noted above, Equifax also did not timely respond to interrogatories, necessitating a motion to compel.

This pattern of conduct is not an isolated incident. Rather, Equifax has engaged in a pattern of these types of tactics as part of its national litigation strategy. Several other courts

have admonished or sanctioned Equifax for its flouting of discovery rules.  Even so, Equifax

does not seem intent upon changing its methods.

In <u>Faille v. Equifax</u>, U.S. Dist. Court (E.D. Va.) Case No. 3:06-cv-617, the Honorable

Robert Payne required Equifax's general counsel and a personal representative of Equifax's CEO

to personally appear before him to answer for failure to comply with court orders and discovery

requests.  Equifax narrowly avoided formal sanctions because Messrs. Mast and Smith assured

Judge Payne that Equifax "recognizes the impropriety and inappropriateness of the discovery

conduct outlined in the motions for sanctions."  Ex. 31 to Baxter Decl., p. 3.

In <u>Robinson v. Equifax</u>, U.S. Dist. Court (E.D. Va.) Case No. 1:06-cv-1336, the

Honorable T. Rawles Jones, Jr., chastised Equifax for similar discovery tactics, including

untimely production of frozen scans, failure to respond to interrogatories, and failure to produce

witnesses for deposition.  Judge Jones stated:  "[W]hat Equifax has done and not done in this

case is simply not acceptable.  It is completely at odds with the established customs and practices

of this division.  It is completely at odds with the standards to which the Curt as a whole, not just

this division hold counsel and their clients to get discovery done in an appropriate and timely

matter so that the case can be litigated on its merits."  Ex. 32 to Baxter Decl., p. 17.

In <u>Williams v. Equifax</u>, Orange County Circuit Court (Florida) Case No. 48-2003-CA-

9035-O, the Honorable George A. Sprinkel IV entered an order striking Equifax's answer and

affirmative defenses because of discovery abuses.  As in this case, Equifax was found to have

failed to timely produce frozen scans.  In his written opinion, Judge Sprinkel noted that the

conduct was not isolated, citing <u>Moore v. Equifax</u>, U.S. District Court (E.D. Tex) Case No. 2:02-

cv-303.  Ex. 33 to Baxter Decl., p. 21.

In <u>Moore</u>, the Honorable T. John Ward, of the Eastern District of Texas considered a

motion for sanctions based upon Equifax's failure to produce witnesses for deposition. Judge Ward first required Equifax to produce witnesses in Shreveport, LA, at Equifax's expense. Ex. 34 to Baxter Decl., p. 12-15. Judge Ward then stated: "But let me tell you that the next sanction if your client fails to comply with this sanction, will be even more severe. It will be more in the nature of striking defenses and if that doesn't get their attention then we will just enter a judgment by default on liability." Ex. 34 to Baxter Decl., p. 14.

C. The Efficacy Of Lesser Sanctions.

Plaintiffs seeks entry of a default judgment as to liability against Equifax. While other lesser sanctions are available, they are not appropriate in this case. Lesser sanctions in the other cases cited above have failed to change Equifax's litigation tactics. Numerous courts cited above have imposed increasing sanctions against Equifax, yet it persists in its litigation tactics. In Williams, the court struck Equifax's answer and affirmative defenses, effectively entering a directed verdict against Equifax, and allowing the plaintiff to recover damages relating back more than a decade. Still, this did not convince Equifax to change its ways in this case.

In this case, during the hearing on plaintiff's motion to compel, the Court specifically warned Equifax that failure to comply with discovery would result in severe consequences. Just two days later, after affirming to the Court that depositions were going forward on June 3, 2010, Equifax failed to appear for a properly noticed deposition. And then it failed to appear again the very next day. Equifax seems to have convinced itself that it is not required to comply with the rules of discovery, or with the admonitions of this Court.

A lesser sanction will simply reward Equifax for its bad conduct, by allowing it to run out the clock on discovery and avoid having to give depositions. Permitting plaintiff additional time to complete the depositions would only encourage Equifax to engage in this conduct further in

this case and others, and allow Equifax to claim "no harm, no foul."  Requiring Equifax to pay

plaintiff's costs and attorneys fees would make such misconduct just the "cost of litigation."

Excluding testimony by Ms. Willis, Ms. Dorman, or their surrogates also would not

rectify the problem.  Plaintiff can demonstrate her prima facie case easily based upon the

documents she has produced in the case.  However, in order to demonstrate the reckless and

willful nature of Equifax's violations under 15 U.S.C. § 1681n, plaintiff intends to call Equifax's

witnesses to testify that 1) it was Equifax's fault that previously deleted accounts were reinserted

into plaintiff's credit file; 2) false and derogatory accounts were being simultaneously suppressed

and reported in plaintiff's credit files; 3) that the reinsertion was not caused by transposed digits

or new account numbers assigned by creditors (as Equifax has asserted); and 4) that Equifax

knowingly deleted numerous false accounts, which allowing other false accounts to continue

reporting.

In <u>Williams</u>, even striking the answer and affirmative defenses was an insufficient

sanction to prevent continued misconduct by Equifax.  The order imposing sanctions in that case

took place in 2007.  The court struck the answer and counterclaims, which had two effects: 1) to

withdraw Equifax's denial of liability; and 2) to negate the statute of limitations.  Even after the

jury awarded $2.9 million against Equifax in <u>Williams</u>, it did not change Equifax's litigation

tactics.

Finally, a default judgment is favorable to only striking the answer, because it will

advance the case by many months by eliminating additional delays in discovery, and precluding

defendant from filing dispositive motions.  This Court has routinely denied Equifax's motions for

summary judgment, but Equifax persists in filing these motions.  See, e.g., <u>Pourfard v. Sprint

Nextel Corporation, et al.</u>, U.S. Dist. Court (Or.) Case No. CV-07-0854-AA; <u>Lenox v. Experian</u>

Information Solutions, Inc., et al., U.S. District Court (Or.) Case No. CV 05-1501-AA.  In

Pourfard, Judge Aiken noted the Ninth Circuit's caselaw holding that reasonableness under the

Fair Credit Reporting Act "will be a jury question in the overwhelming majority of cases."  Op.

at p. 10-11, citing Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).

D.  The Relationship or Nexus between the Misconduct and the Matters in Controversy.

        In this case, the nexus between the misconduct and the matters in controversy are

obvious.  Plaintiff has been unable to obtain deposition testimony from defendant regarding the

facts of the case.  Because of Equifax's litigation strategy of producing voluminous records the

night before a deposition, plaintiff was not able to complete the deposition of Lisa Willis on

some 178 pages of newly produced records.  Equifax repeatedly failed to produce Ms. Willis for

the properly noticed continuation deposition.

        Furthermore, Ms. Willis testified in her first deposition that she could not answer

questions related to topics listed in the Fed. R. Civ. Proc. 30(B)(6) deposition notice.  Equifax's

counsel indicates that Margaret Leslie is the proper witness for that testimony; however, Equifax

repeatedly failed to produce Ms. Leslie for properly noticed depositions.

E.  Prejudice to Plaintiff.

        Plaintiff is prejudiced because the Court has stated that no further extensions of the

discovery cut off in this case will be allowed.  Equifax has stymied plaintiff's efforts to complete

discovery in this case.  The discovery cut off is June 15, 2010.  Out of an abundance of caution,

plaintiff noticed the depositions well in advance of the discovery cut off, on May 20 and 21,

2010.  When Equifax's attorney called to cancel those depositions, plaintiff was assured that the

depositions would take place the week of June 1, 2010.  Plaintiff's counsel noticed those

depositions three different days on the week of June 1, 2010, and Equifax failed to produce

witnesses on all three days.  When Equifax failed to appear at the depositions three times the week of June 1, it did so knowing that plaintiff had conflicts during both of the weeks preceding the end of discovery.  Equifax has been effectively attempting to run out the clock on discovery so that it does not have to give the continuation and supplemental depositions.

Additionally, plaintiff is prejudiced because her attorney repeatedly had to prepare for depositions that are canceled the morning of the deposition.  Time is blocked out for deposition preparation and for the deposition itself.  Each time the depositions are rescheduled, plaintiff's attorney must redo much of the deposition prep, reviewing hundreds of pages of documents, deposition notices, and prior deposition transcripts.

Finally, plaintiff repeatedly has to pay the cancellation fees of the court reporter who dutifully appears at the King & Spalding office only be told that there is no indication of a deposition taking place on that date.  Plaintiff has been billed hundreds of dollars in no-show fees by the court reporters who appear but are called off.  Equifax has made no effort to prevent these fees from being incurred.

<u>CONCLUSION</u>

Equifax has not litigated this case in good faith.  Consistent with its litigation strategy exemplified by numerous other cases, Equifax has failed to timely produce records, has failed to respond to interrogatories, and has failed to appear for deposition on four separate occasions.  The two most recent instances in which Equifax failed to appear for deposition occurred after the Court specifically admonished Equifax about the consequences of failing to comply with discovery.

Other courts have warned Equifax of its misconduct.  The court in <u>Williams</u> went so far as to strike Equifax's answer.  None of this has changed Equifax's conduct.  For the reasons set

forth herein, plaintiff respectfully asks the Court to enter a default judgment against Equifax on

all of plaintiff's claims for relief.

DATED this 4th day of June, 2010.


/s/ Justin M. Baxter

_____
Justin M. Baxter, OSB #99217
justin@baxterlaw.com
(503) 297-9031 (Telephone)
(503) 291-9172 (Facsimile)
Of Attorney for Plaintiff April Hettman

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing PLAINTIFF'S MEMORANDUM IN

SUPPORT OF MOTIN FOR SANCTIONS on:

Jeffrey M. Edelson
Markowitz, Herbold, Glade & Mehlhaf, P.C.
Suite 3000 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204

Ann Broussard
King & Spalding, LLP
1180 Peachtree Street, NE
Atlanta, GA 30309-3521

    Counsel for Defendant Equifax Information Services, LLC

[X]  Via First Class Mail

[ ]  Via Hand Delivery

[ ]  Via Email (CM/ECF)

DATED this 4th day of June, 2010.

                            /s/ Justin M. Baxter
                            _____
                            Justin M. Baxter, OSB #99217
                            justin@baxterlaw.com
                            (503) 297-9031 (Telephone)
                            (503) 291-9172 (Facsimile)
                            Of Attorney for Plaintiff April Hettman