1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

-------------------------------:
                               :
NICOLE M. ROBINSON,            :
                               :
                               :
        -vs-                   :        Case No. 1: 06-cv-1336
                               :
                               :
EQUIFAX INFORMATION            :
SERVICES, LLC,                 :
             Defendant.        :
                               :
-------------------------------:

HEARING ON MOTIONS

April 20, 2007

Before:   T. Rawles Jones, Jr., Magistrate Judge

APPEARANCES:

Thomas B. Christiano, Counsel for the Plaintiff

Lewis P. Perling, Counsel for the Defendant

1          NOTE:   The case is called to be heard at 10:26 a.m.

2   as follows:

3          THE CLERK:   Nicole Robinson versus Equifax

4   Information Services, case number 06-cv-1336.

5          THE COURT:   Good morning.

6          MR. CHRISTIANO:   Your Honor, Thomas Christiano for

7   the plaintiff, Nicole Robinson.

8          THE COURT:   Good morning.

9          MR. PERLING:   And, Your Honor, Lewis Perling on

10  behalf of Equifax.  If I might address the Court before we get

11  started on my appearance without, unfortunately, our local

12  counsel being available.

13         THE COURT:   Sure.

14         MR. PERLING:   Judge, of course, I am aware of the

15  requirement that Virginia Bar counsel be present.  I am Lewis

16  Perling, I am from Atlanta, Georgia, we are national counsel

17  for Equifax.  I have been admitted pro hac.

18         Mr. Montgomery had a conflict today.  We received

19  this motion, of course, last Friday.  We have been working

20  since Monday to resolve it.

21         I was led to believe that we could resolve it

22  without a hearing.  We consented to most everything they have

23  asked for.  We have provided additional information.

24         Mr. Montgomery had an unavoidable conflict this

25  morning.

3

1          THE COURT:  That's fine.  It happens.  And I

2   actually remember what it's like out there in the real world,

3   Mr. Perling.

4          MR/ PERLING:  Thank you, Judge.

5          THE COURT:  So, you may appear without local

6   counsel.

7          MR/ PERLING:  Thank you, Your Honor.

8          THE COURT:  Mr. Christiano, I hope you agree with

9   Mr. Perling that a lot of the dispute has been resolved.

10         From your side of the room, what remains to be

11  resolved.

12         MR. CHRISTIANO:  Your Honor, we would disagree that

13  most of the dispute has been resolved.

14         As was made clear in the motion, there was a lot of

15  effort made to obtain these documents and proper responses to

16  interrogatories.

17         What has happened is there has been a burden

18  shifting to plaintiff to constantly petition, request to get

19  the documents.

20         And this morning the supplementation that was

21  supposedly going to be made was given to me just now.  There

22  is no Bates stamp numbers on the supplemented documents.

23         And there were prior representations made two to

24  three weeks ago that the reason for the delay was that the

25  documents had to be sent out to be copied.

4

1        And I don't even know if this is a complete set.
2   They have been thrust upon me at this point.  Which has been
3   the pattern and practice of discovery of Equifax in this case
4   and in previous cases we have had before them with this Court.
5        THE COURT:  Well, we are not going to spend time
6   this morning on previous cases.
7        MR. CHRISTIANO:  I will move on, Your Honor.
8        Where we are right now, we have less than a month
9   toward the discovery.  We have just received what's purported
10  to be the rest of the documents.  I have serious reservations
11  whether those are the rest of the documents.  I can tell there
12  is, that Bates stamp number is just done on a 30-second look
13  at them.  Their interrogatories are wholly incomplete.
14       The most emblematic problem of what's going on in
15  this case occurred when we received unsigned and unverified
16  supplemental responses to interrogatories this week.
17       We requested information on people that have worked
18  on plaintiff's credit file, and we were told that only two
19  people worked on the credit file.
20       So, we said, okay, we went back and looked at the
21  documents with the code that we were given for those two
22  people.  Upon reviewing the documents that we did have, we
23  discovered that six to seven other operators and a person by
24  the name of Gary appeared to have worked on plaintiff's credit
25  file.

5

1      At that point we knew that we could not reply on the
2   supplementations of this defendant and that the responses
3   still remain inadequate.

4      The other point is, as we addressed in our
5   memorandum in the motion to Interrogatory Numbers 16 and
6   Number 23, we were asking questions about tell us why other
7   people's information is showing up on our client's credit
8   report.

9      Answer:  Well, we don't know that it's happened.  We
10  don't know that we have provided other information on your
11  client's credit report.

12      So, that's fine, as part of this memo we attached
13  Exhibit C that demonstrated that other credit files were
14  coming on our client's credit report.  We still have no
15  supplementation on those responses.

16      It is emblematic of the problem that we have had in
17  this case and why the relief we requested is proper.  Before
18  we even filed the discovery plan, we talked with counsel, we
19  requested these documents.  They knew exactly what we were
20  looking for.  We made it crystal clear, that is February 21,
21  Your Honor.

22      Here it is April 20 and we get the final so-called
23  supplementation of documents that were allegedly sent out to
24  be copied when it is not, that doesn't look like all that many
25  documents to be produced that can't be produced much sooner

6

1    than now.

2              So, this is a corporate defendant who is on the New

3    York Stock Exchange.

4              Moreover, there is a whole group of documents that

5    we allege are critical to this case.  Our client has suffered

6    mightily from the theft of her identity.  She testified before

7    Congress.

8              When she testified before the Congress, there was an

9    Equifax officer representative there.  He heard her story and

10   told her he would do something about it.  And our allegation

11   is that he sent an e-mail down to Equifax in order to get the

12   problem solved.

13             Not only in the interrogatory responses are the

14   details of what he has done not in there, he doesn't identify

15   any communications that have occurred.  And now they say they

16   can't produce the e-mail because they no longer have them.

17   Which, again, strains credibility for a corporation the size

18   of Equifax and reports on the New York Stock Exchange, that

19   they are not going to retain an e-mail within the last year?

20   And we are supposed to rely on that.

21             It is the same problem we have had throughout

22   discovery.  It is like an onion, we peel one layer off, we

23   discover another.

24             So, that's why we requested that Equifax be ordered

25   to produce their corporate representatives up here.  And

7

1   that's why we requested relief from the discovery pretrial
2   conference deadline of May, in May because we are still
3   putting together the case through no fault of our own and
4   based upon Equifax's delays.
5             THE COURT:  All right.  Thank you, Mr. Christiano.
6             Mr. Perling, what's going on here?
7             MR. PERLING:  Judge, we have worked mightily to meet
8   the demands of the plaintiff.  We have worked timely and
9   consistently with them, cordially with them as much as
10  possible.
11            The frozen scans are a unique issue, Judge.
12  Typically Equifax would make a motion for a protective order
13  because the documents that Equifax has to produce as a frozen
14  scan are extremely time consuming, extremely costly and very
15  difficult.
16            And if I might just take a moment to explain what a
17  frozen scan is and how that process works.  I hope to point
18  that out to the Court.
19            Typically we would seek a protective order--
20            THE COURT:  It would have been helpful, by the way,
21  if you had filed an opposition to the motion that included
22  that among other things.
23            MR. PERLING:  I understand, Your Honor.  And my
24  apologies for that is, is that we indeed thought that we had
25  resolved the issues.

8

1        THE COURT:  Well, that's hard to accept, Mr.

2   Perling, in light of the representations that Mr. Christiano

3   has made to the Court and--

4        MR. PERLING:  I understand.  I hope--

5        THE COURT:  And for better or worse, the Court's

6   prior experience with him comes into play.

7        MR. PERLING:  I understand.

8        THE COURT:  Tell me what's going on.

9        MR. PERLING:  Well, the frozen scans are a

10  document--  At the end of each month Equifax takes a snapshot

11  of its entire database.

12        As the Court is probably aware, Equifax being one of

13  the three national credit reporting agencies, it has a

14  humungous database with the credit information of every

15  consumer in the United States.

16        In order to, as a loss prevention method, Equifax

17  takes a snapshot of the entire database at the end of each

18  month and does what I like to call kind of a zip file of it.

19  As the Court might be aware --

20        THE COURT:  I am.

21        MR. PERLING:  -- as I do of how computers work, they

22  simply condense the information.  It is then stored.

23        In order to then cull information from that, someone

24  literally has to read through lines and lines and lines of

25  code to find someone's name.

1    So, what happened here was Ms. Robinson was a victim
2  of fraud, a very crafty fraudster who used her name in
3  numerous different addresses and variations on the plaintiff's
4  Social Security number.

5    So that in Equifax's database there were created
6  numerous fraudulent credit files that looked like the
7  plaintiff, but weren't her.

8    And what the plaintiffs have asked for is that
9  Equifax go back into the frozen database and cull every
10  instance that they could find where these multiple frozen
11  scans were of this other person.  Very time consuming.  I
12  informed the plaintiffs of this at the beginning.

13    We produced them in a timely fashion based upon a
14  one or two-day grant of an extension of time from them to
15  provide additional information.  Bates labeled.  All of the
16  documents that Equifax typically has with regard to a
17  consumer.  That is, the contacts it has with regard to a
18  dispute.  A document called an audit trail which shows when an
19  inquiry was made.  The manuals that Equifax maintains for its
20  procedures.  And the frozen scans on the consumer herself.  It
21  is about 1,000 pages, all labeled and all divided up so that
22  they were easily obtainable and easily readable.

23    I informed counsel that the other frozen scans were
24  very time consuming.  I was informed that ultimately there
25  were four boxes of documents that the person at Equifax had to

1    go through in order to cull what has been produced here.  And
2    that's because she had to look at every Nicole Robinson in
3    Maryland and every Nicole Robinson in Texas to determine which
4    of these Nicole Robinsons out of these four boxes related
5    potentially and, of course, she was overbroad in producing
6    these documents, potentially to this.

7          As part of what I will call a perfect storm here
8    with regard to production of these documents, two weeks ago I
9    was promised these documents from Equifax.  I did not realize
10   it, but the person who was producing them's grandmother passed
11   away.  She was out at the end of that week.

12         The next week I was on vacation, that was last week.
13   I came back Friday, hoping to find them on my desk and send
14   them immediately over to opposing counsel.  And instead I got
15   the motion to compel.  Immediately contacted Equifax and said,
16   you know, what's happening.  I was informed this person was
17   out.  This week the four boxes came through, they were culled
18   and here are the documents here.

19         They have not been Bates labeled.  I will provide
20   you with a supplemental copy that is Bates labeled.  Okay.
21   But I wanted to bring them here today and make sure that you
22   have them.

23         So, that is-- I am trying to look at the motion and
24   see exactly what they are complaining they didn't get in the
25   motion.

1    One of the things they claim they didn't get were

2    four ACIS cases.  An ACIS case is Equifax's record of a

3    reexamination.

4    In speaking to Mr. Blankingship this week, we

5    determined that of these four, there was one that I personally

6    missed because I had a list of the ACIS cases, provided each

7    one.  We provided it here today.

8    So, they have, this is on page 2 of their brief, the

9    documents they were looking for.  One of these, the last one,

10   has been produced.  The other three, there were no ACIS cases,

11   and Mr. Blankingship understands that.

12   The next documents they claim that they didn't have

13   were the e-mails.  And plaintiff's counsel has mentioned an

14   e-mail that the person who attended the Congressional hearing

15   sent.

16   I asked him if he had that this week.  He does not

17   have it.  There is a three-month retention policy at Equifax.

18   They are very strict about their e-mails and very strict about

19   their data.  That has been deleted.

20   I asked everyone else involved who was involved with

21   Ms. Robinson and handling her file if they had any e-mails.  I

22   did get one and that has been produced today.  And I am told

23   that that is the only e-mail that's in possession of Equifax

24   at this time.

25   The last thing they mention on page 3 with regard to

12

1  the documents is that they claim that Equifax sent them on a

2  fishing expedition to look through these documents.  These are

3  versed attorneys in handling Fair Credit Reporting Act cases.

4  They have read Equifax's documents numerous times.  They were

5  able to cull through them very easily because they provided a

6  lot of information to me showing that they have been able to

7  cull through them.

8       We did not produce them in a haphazard way.  They

9  were marked.  The ACIS cases were completely separate from the

10 other documents.  The audit trails were clearly separate from

11 the other documents.  The manuals were clearly separate from

12 the other documents.  And the frozen scans were clearly

13 separate from the other documents.

14      Experienced attorneys as these, this is not a

15 confusing way to produce these documents.

16      Judge, let me just, let me get to the bottom line.

17 I looked at the relief, in going to the last page or the sixth

18 page of what they have asked for, the relief that they have

19 requested.  They have asked for full, complete and proper

20 responses to interrogatories and document requests from

21 Equifax.

22      It is our contention that we have provided those.

23 They submitted to Your Honor a copy.  I think if you look at

24 the responses, Equifax has indeed responded to each one.

25      They seem to kind of say, well, we want to know

1   information before we take your client's depositions.  We want

2   to know what these people are going to say before we take

3   their depositions.

4        With all due respect, they have asked for the

5   depositions, they have said they are going to take them.  They

6   haven't noticed them.  They said they are going to take them.

7   These people are located in Atlanta.  They are not the party,

8   they are not necessarily the corporate witness.  They are the

9   parties.

10       So, to drag somebody up here from Atlanta who is not

11  a party, who is somebody that just works at Equifax, we would

12  submit is unfair.

13       But to the extent--

14       THE COURT:  I am probably not going to require you

15  to produce Equifax employees who are resident in Georgia up

16  here.  I am about one step away from requiring Equifax to pay

17  their expenses going down to Atlanta to take the depositions.

18       MR. PERLING:  Well, as an alternative to that, Your

19  Honor, obviously, we would suggest that we would bring the

20  witnesses up here if it was the same expense, but we would

21  leave that to Your Honor.

22       But going back to the relief they have requested--

23       THE COURT:  I would like to be able to leave it to

24  you-all, Mr. Perling.

25       MR. PERLING:  Okay.  Thank you, Your Honor.

14

1          THE COURT:  I haven't decided whether I can do that

2  yet.

3          MR. PERLING:  Right.  With regard to, you know, the

4  relief they requested, this is why we said we thought we had

5  worked this out.  We agreed with them that we provided full

6  responses.  That if there was additional information they

7  wanted, we would supplement it.

8          They have asked me who knows what.  And I said to

9  Mr. Blankingship on the phone numerous times this week, I will

10  supplement by providing again, though we contend we have

11  already done it, a statement that this is Ms. Fluellen, she

12  was involved in this, here is what she says.  And I will

13  provide that to them.

14          And that's the full responses that they have

15  requested.  We have agreed to that.

16          An extension of time for plaintiff to file their

17  expert reports.  Of course, that's up to the Court, but we

18  have agreed to that.  We don't oppose that.

19          The extension of discovery through, through the

20  deadline of the pretrial at the end of next month, that's what

21  they have asked for, we didn't oppose that.

22          The only consideration we would ask for is not

23  ordering Equifax to produce its witnesses here in Virginia.

24  And, of course, we leave that up to Your Honor.

25          THE COURT:  Thank you.

1         MR. PERLING:  Thank you.

2         THE COURT:  Do you need to be heard further, Mr.

3   Christiano?

4         MR. CHRISTIANO:  I would just like to point out two

5   brief things, Your Honor.  And I am going to go with why the

6   interrogatories are not full and complete.

7         We didn't hear much about why the interrogatories

8   aren't full and complete from Mr. Perling this morning.  And

9   the reason, I submit, is he knows they are not.

10        The responses for the most part incorporated Rule

11  33(d), and they were improper to do that.

12        One of the questions we asked is:  Tell me all your

13  changes to your policy from a certain date.  In the previous

14  case, and I know Your Honor doesn't want to hear about the

15  previous case, but in this, to this extent it is relevant on

16  the merits.  They defended their case on the previous, in the

17  previous matter.

18        We made certain changes, we are constantly making

19  changes to our policy to make sure we have reasonable

20  procedures to protect people.  Therefore, whatever procedures

21  and policy that they are changing, is relevant to their

22  defense of this case.

23        And their response to that interrogatory was:  See

24  an entire policy manual.

25        Okay.  We have been through the policy manual

1    before.  I have a pretty good understanding of what's where,

2    but I don't know necessarily what has been changed since when.

3    And that is not a proper response to that specific

4    interrogatory.

5          And if I go back to my previous argument on

6    Interrogatory Number 16, Interrogatory Number 23, the flavor

7    of its responses to the interrogatories are, here is the

8    documents, you guys know what you are doing, you go look

9    through, you take all your time to look at them, we are not

10   going to be bothered to give proper responses to

11   interrogatories.

12         It was improper.  The supplementation was improper.

13   After we did go back and review, we found more people that

14   were not even disclosed.  We were told only two people worked

15   on the case.  Discovery closes in less than a month.  We were

16   didn't diligent in getting out our discovery.  We diligently

17   requested these documents in February.  And they have known

18   since February 21 what we wanted and what we were looking for

19   to get this, keep this case on track.

20         And we knew that we could potentially have a problem

21   and we acted with no undue haste.

22         THE COURT:  Thank you.  Mr. Perling --

23         MR. PERLING:  Yes, sir.

24         THE COURT:  -- you get the--

25         MR. PERLING:  Thank you, Your Honor.

17

 1              THE COURT:   You can have a seat.

 2              MR. PERLING:   Okay.

 3              THE COURT:   You get the benefit of the doubt today

 4    personally.

 5              MR. PERLING:   Thank you, Your Honor.

 6              THE COURT:   Because I accept your representations

 7    about where you were and what you were doing.  And I take into

 8    account on a real world basis that you have local counsel who,

 9    as far as I know, does not practice regularly in this division

10    of the Court.  And the Alexandria Division and the Richmond

11    Division of the Eastern District of Virginia do things very

12    differently.

13              That being said, what Equifax has done and not done

14    in this case is simply not acceptable.  It is completely at

15    odds with the established customs and practices of this

16    division.  It is completely at odds with the standards to

17    which the Court as a whole, not just this division, hold

18    counsel and their clients to get discovery done in an

19    appropriate and timely manner so that the case can be

20    litigated on its merits.

21              And in that regard, I want you to tell the folks in

22    Atlanta that if they had any doubt about it, this case is

23    going to be litigated on the facts.

24              I find that Equifax's responses to the

25    interrogatories and document requests are inadequate,

18

1   essentially for the reasons set out by plaintiff in her

2   papers.  And I don't think under the circumstances presented

3   here I need to go through them item by item.  I will if you

4   want me to, but I don't think that's necessary.

5           MR. PERLING:  Not necessary.

6           THE COURT:  I am going to require that Equifax serve

7   complete and adequate interrogatory answers by hand or by fax

8   or by e-mail as you-all may agree to be in Mr. Christiano's

9   hands not later than noon one week from today, April 27.

10          And by that I intend that Equifax reanswer every one

11  of the interrogatories.  And 33(d) answers will not be

12  acceptable because I find that they have been misused in the

13  previous responses.

14          I want a complete new set of interrogatory answers.

15  If the answer is, we stand on our previous answer, you are

16  entitled to do that.  But I want Equifax to go all the way

17  through, interrogatory by interrogatory, and give Mr.

18  Christiano, in colloquial terms, a stationary target.

19          And with respect to the document requests, Equifax

20  is to serve a supplemental Rule 34 document response, again by

21  hand or otherwise as you-all may agree, not later than noon

22  next Friday which squarely meets the substance of every

23  document request and says what has been produced, what will be

24  produced and, if applicable, what's being withheld on any

25  claim of privilege or protection.

1        And to the extent documents have not theretofore

2   been produced, the documents themselves properly organized and

3   Bates numbered are to be in Mr. Christiano's hands not later

4   than noon on the following Monday, April 30.

5        This is a Rule 37(a) motion.  It is clear to the

6   Court that the reason we are only at the Rule 37(a) stage at

7   this point is that the good faith efforts of plaintiff's

8   counsel to get the matter resolved without Court involvement

9   have been frustrated, whether intentionally or not, I

10  understand people's family situations.  And a death in the

11  family has to be taken into account.

12        I don't know what happened, I don't care what

13  happened beyond what I have said, but it is clear and I find

14  that plaintiff's counsel's good faith efforts to resolve the

15  matter without Court involvement have been frustrated by

16  Equifax's conduct, acts and omissions.

17        Equifax needs to understand as well that if this

18  matter gets to the Rule 37(b) stage, which I hope it will not,

19  the relief is likely to be draconian.

20        Any questions?

21        MR. PERLING:  No questions from Equifax, Judge.

22        THE COURT:  All right.  Go get it done, gentlemen.

23        MR. PERLING:  Thank you, Judge.

24        MR. CHRISTIANO:  Does that mean the relief with

25  regards to additional time is denied or--

20

1         THE COURT:  Let me, let me cover that too, Mr.

2    Christiano.  I intended to and didn't follow my own notes.

3         Plaintiff's discovery is extended through Friday

4    June 2 for the purpose of completing deposition discovery and

5    anything else that may be necessary as a result of what gets

6    produced next weekend.

7         I am not going to move the final pretrial conference

8    because I don't need to.  If you-all tell Judge Lee where

9    things stand, he will set the trial date accordingly.

10        You are asking for an additional two weeks after you

11   got everything, Mr. Christiano, in your expert report, so if

12   you have anything by April 30, then service of your expert

13   report by May 14 ought to give you the relief you were

14   requesting.  I find that's appropriate.

15        Mr. Perling, I didn't hear anything about a defense

16   expert report.  Is there going to be one in this case?

17        MR. PERLING:  Likely not, Your Honor.

18        THE COURT:  I didn't--

19        MR. PERLING:  We will just want to depose him.

20        THE COURT:  All right.  I am not going to deal in

21   detail today with the question where anybody needs to be

22   produced for deposition.  If the findings that I have made

23   this morning don't generate agreement on how that's going to

24   be handled, you-all can get in touch with me by telephone.

25        MR. CHRISTIANO:  Okay.

21

1    THE COURT:  All right.  Any other questions?  All

2    right.

3    MR. CHRISTIANO:  No, Your Honor.

4    THE COURT:  Thank you, gentlemen.

5    NOTE:  The hearing is concluded at 10:53 a.m.

6    ----------------------------------------------

7

8

9    C E R T I F I C A T E  of  T R A N S C R I P T I O N

10

11    I hereby certify that the foregoing is a true and

12   accurate transcript that was typed by me from the recording

13   provided by the court.  Any errors or omissions are due to the

14   inability of the undersigned to hear or understand said

15   recording.

16

17    Further, that I am neither counsel for, related to,

18   nor employed by any of the parties to the above-styled action,

19   and that I am not financially or otherwise interested in the

20   outcome of the above-styled action.

21

22

23                                    _____

24                                    Norman B. Linnell

25                                    Court Reporter - USDC/EDVA