1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                        MARSHALL DIVISION

 3   DEBORAH MOORE              *    Civil Docket No.
                                *    2:02-CV-303
 4   VS.                        *    Marshall, Texas
                                *
 5   CSC CREDIT SERVICES INC.,  *    January 13. 2004
     ET AL                      *    11:30 A.M.
 6

 7         TRANSCRIPT OF HEARING ON PLAINTIFFS' MOTION TO COMPEL
                     BEFORE THE HONORABLE T. JOHN WARD
 8                     UNITED STATES DISTRICT JUDGE

 9

10   APPEARANCES:

11   FOR THE PLAINTIFF:         MR. DAVID SZWAK
                                Bodenheimer, Jones, Szwak & Winchell
12                              401 Market Street, Suite 240
                                Shreveport, LA   71101
13

14

15

16   FOR THE DEFENDANT:         MR. LEWIS PERLING
                                Kilpatrick Stockton, LLP
17                              1100 Peachtree Street, Suite 2800
                                Atlanta, GA   30309
18

19

20

21

22   COURT REPORTER:            MS. SUSAN SIMMONS, CSR
                                Official Court Reporter
23                              100 East Houston, Suite 125
                                Marshall, TX   75670
24                              903/935-3868

25   (Proceedings recorded by mechanical stenography, transcript
     produced on CAT system.)
```

Exhibit 34
Page 1

2

1       P R O C E E D I N G S

2       THE COURT: Please be seated. All right. We've got

3  some matters on discovery today in Deborah Moore vs. CSC

4  Credit Services, Inc., and others, Cause No. 2:02-CV-303.

5       I guess the only parties interested is the Plaintiff

6  and Equifax in this, is that right?

7       MR. SZWAK: Yes, sir, that is the only remaining

8  parties.

9       THE COURT: All right. Are you ready to go for the

10 Plaintiff, Mr. Szwak?

11      MR. SZWAK: Yes, sir.

12      THE COURT: And Mr. Perling, you are here for the

13 Defendant?

14      MR. PERLING: That is right, Your Honor.

15      THE COURT: Are you ready?

16      MR. PERLING: Yes.

17      THE COURT: How is Zeiger -- who is Zeiger, is he

18 here?

19      MR. PERLING: No, he is our co-counsel, Your Honor,

20 for Equifax.

21      THE COURT: Is he admitted to this bar or is he pro

22 hac vice?

23      MR. PERLING: I'm the pro hac vice, Your Honor, and

24 he is in Dallas.

25      THE COURT: I understand he is from Dallas. My

Exhibit 34
Page 2

1  question was simply is he admitted to the Eastern District or
2  is he also pro hac vice?
3       MR. PERLING: No, he is admitted.
4       THE COURT: All right. It is your motion, sir. The
5  Court has read what has been filed, and I have additionally
6  read what you filed yesterday. Have you seen that, Mr.
7  Perling?
8       MR. PERLING: I did receive it as I was walking out
9  the door last night, Your Honor, and read it on the airplane.
10      THE COURT: Well, the Court sees the matters raised
11 in this supplemental motion as something that I would
12 ordinarily handle by a hotline conference, so we will take it
13 all up today.
14      You may proceed. If you will take the podium,
15 please.
16      MR. SZWAK: Your Honor, may it please the Court. I
17 represent the Plaintiff in this case, and what originally
18 appeared to be a mixed credit file scenario caused by
19 defective matching logic, we have now learned to be a
20 defective misposting of information on the front end. And
21 what that basically means is is that credit information that
22 was incoming into Equifax was misposted and misapplied to the
23 wrong file. There are two separate credit reporting data
24 files in existence in the data base, and due to a series of
25 events that occurred, information continued to flow in

Exhibit 34
Page 3

4

1  client's credit file.  Information that was never reported
2  about her or her identifiers, and was kept in that file
3  despite reinvestigation requests.
4       Now, the basis of Plaintiff's case here has to do
5  with not only violations of 1681(e) subpart (b), the duty by
6  Equifax to maintain reasonable procedures to assure maximum
7  possible accuracy, but also a failure of 1681(i) subpart (a),
8  both of the Fair Credit Reporting Act that pertains to their
9  obligation to conduct reasonable reinvestigations, and to
10 maintain accurate information, post-reinvestigation.
11      Now, as discovery commenced in this case, one of the
12 first things we did was to issue interrogatories.  Your Honor,
13 I mistakenly said in my motion that we had filed a separate
14 motion with regard to the interrogatories, we had not.  I have
15 it in draft to be filed.  These were served back in July.
16 They have never been answered.  That is the interrogatories to
17 Defendant Equifax, were served in July, and the answers were
18 due, according to the note that I put here on the front, on
19 August 2nd of 2003 or thereabouts.  We did have a draft Motion
20 to Compel in my office, but that was never filed.
21      The subject of the two Motions to Compel that we
22 brought before the Court that we are talking about, one has to
23 do with the first deposition that was taken of Equifax.  In a
24 sitting on August 25 of 2003 we had noticed the Plaintiff's
25 deposition, but that it has not been completed because the

Exhibit 34
Page 4

1  only witness that was offered by Equifax at the time testified
2  that she was completely unprepared, had not produced any
3  additional documents, contended that all of the documents that
4  might exist were in the possession of the affiliate credit
5  bureau, CSC Credit Services, who had also subcontracted with a
6  local, smaller, hometown Northeast Texas Credit Bureau.  What
7  we ultimately found was that all of the records, in fact, are
8  in the possession of Equifax and have not been produced in
9  this case either pursuant to disclosure or pursuant to a
10 notice of deposition duces tecum where we outlined the
11 specific records that we needed in order to prosecute our
12 case.
13          THE COURT:  With respect to your duces tecum, were
14 any objections filed?
15          MR. SZWAK:  Your Honor, there was an objection filed
16 by Equifax and it was actually produced on the day of the
17 deposition, if I remember correctly, and was attached as an
18 exhibit to that deposition.  And it was a sort of -- in my
19 opinion, a boilerplate-type of objection to, you know, these
20 records would be too burdensome or oppressive and involved
21 trade secrets and confidentiality, and it was the same type of
22 boilerplate objections that are ordinarily served.
23          Now, in this case, to my recollection, there is a
24 standing protective order that this Honorable Court enters in
25 every one of these cases to facilitate this type of document

Exhibit 34
Page 5

1  production, and also to permit the parties to conduct their
2  depositions with the benefit of those documents. These are
3  document intensive --
4         THE COURT: I mean, I have not reviewed it, I guess
5  I could look on the docket sheet, I have got a copy of it.
6  Did I enter a protective order in this case?
7         MR. SZWAK: Your Honor, you did, and, in fact, in
8  the second -- this most recent deposition of Ms. Hudziak, that
9  was actually brought to my attention by Mr. Perling at the
10 deposition, he said, we have a standing protective order in
11 place.
12        Your Honor, part of the problem with the first
13 deposition had to do with numerous objections, instructions
14 not to testify, a lot of speaking objections, to which the
15 witness parroted --
16        THE COURT: I have read all of this, sir.
17        MR. SZWAK: Yes, sir. And ultimately we brought the
18 first Motion to Compel. Mr. Perling had initially offered and
19 then recanted and then offered again for a second witness. We
20 took the deposition of Lynn Hudziak very recent, within the
21 last two weeks. I had the transcript prepared almost
22 overnight and we produced the additional Motion to Compel
23 which was filed days ago. In the additional Motion to Compel,
24 what is brought out in the testimony of Ms. Hudziak was that
25 there has been a cursory, at best, investigation by Equifax

Exhibit 34
Page 6

1  into what happened, and in order to respond to our 30(b)(6)
2  notice. This is the type of information that would only be in
3  Equifax's possession. There is no other way for the Plaintiff
4  to get at this information. We have noticed it with a notice
5  of deposition duces tecum that's been standing for months now.
6  I mean, we had served the initial notice in blank with the
7  areas of inquiry and the duces tecum many months ago, then
8  after the first sitting of the first deposition, we had filed
9  this -- the first Motion to Compel. We also added several
10 additional areas of inquiry because it became clear that there
11 were additional areas that needed to be explored based on the
12 first deposition. And in the deposition of Ms. Hudziak we
13 identified very specific records that had not been produced,
14 and, in fact, some records which she had even reviewed for the
15 deposition preparation, but had never been produced.
16          Our concern is that -- particularly in paragraph 13
17 of the motion, I outlined for Your Honor specific page
18 references to the deposition of Ms. Hudziak where the records
19 that had been withheld. Some of these records are the most
20 basic items that someone would look to in order to discern
21 what had happened in this case, particularly if they were
22 aware that it was a data misposting case as Ms. Hudziak
23 testified and not a mixed file.
24          It basically is this, Your Honor, whether it was
25 data misposted on the front end to the wrong credit file or

Exhibit 34
Page 7

1 whether it was a mixed file case, which is where credit files
2 combine or come together for purposes of creating a credit
3 report after the match logic is employed pursuant to an
4 inquiry. It is either a front end misposting or after the
5 match logic is employed in an inquiry that may cause a mixed
6 file. That is the two types of front end EB problems that
7 this case could have presented. We learned in Ms. Hudziak's
8 deposition that it was a misposting problem. And, in fact,
9 that the information that had been reported in, though she
10 could not testify because she claimed that they destroyed the
11 base segment information, she couldn't affirmatively say how
12 it had been reported in, but we had taken the deposition of
13 the creditors who allegedly had posted information about my
14 client, and they said we never had her identifiers, we didn't
15 report it about her.

16 So, unfortunately, Your Honor, discovery in this
17 case has been very expensive for the Plaintiff. It has been
18 very time consuming because we didn't have the appropriate
19 records, and certainly not the appropriate witness from
20 Equifax in order to facilitate discovery. Now we are late in
21 the game. We have got -- we need our ability to complete that
22 deposition. They have --

23     THE COURT: When is this case set for trial?

24     MR. SZWAK: I believe we are set in April, Your

25 Honor, but we had an early discovery cut off and an early

Exhibit 34
Page 8

```
 1  dispositive motion cut off.
 2          THE COURT:  I didn't know when it was set.
 3          MR. SZWAK:  Equifax actually has filed a dispositive
 4  motion which we need additional time to complete their
 5  deposition to intelligently respond to the motion, and also we
 6  need the records in order to respond to it.
 7          The only other problem that we have really suffered
 8  in this case from the Plaintiff's perspective was the
 9  deposition of Monogram, that we have twice taken, and on two
10  different occasions, despite us repeatedly asking for the
11  copies of the Equifax credit reports that they cited in their
12  adverse action letter to my client, Monogram has not produced
13  those and proclaim that they are in the country of India in
14  some data base that they have outsourced all of their data
15  storage to.  That is Monogram Credit Card Bank of Georgia, a
16  division of General Electric Capital Corporation located in
17  Atlanta.
18          THE COURT:  I mean, you haven't got them in here
19  today, have you?  Now, are you complaining about Monogram or
20  are you complaining about Equifax not producing the records
21  under their control?
22          MR. SZWAK:  Your Honor, we are complaining about
23  Equifax, but I'm alerting the Court to an additional discovery
24  issue that will have to be taken up in Kansas where the
25  deposition was conducted twice.
```

Exhibit 34
Page 9

```
 1        THE COURT:  For the purpose of how long you are
 2  going to need, okay, I understand.  I understand.
 3        MR. SZWAK:  So, I just wanted you to know in terms
 4  of completing the discovery in the case there are two issues,
 5  Equifax and then there is Monogram, and we are pressing
 6  Monogram now through a Motion to Compel in order to obtain the
 7  records which they withheld.  In the second sitting that we
 8  were able to finally schedule, took place last week or perhaps
 9  the week before, late the week before, but we've tried to
10  complete that deposition and it has been a real nightmare
11  trying to schedule it and to obtain these alleged records that
12  are supposed to be in a computer in India, though they did
13  produce Trans Union and Experian credit reports pertaining to
14  the Plaintiff.  They never would produce the Equifax reports.
15        And so, Your Honor, what we have requested in this
16  case in addition to imposition of costs and attorney fees as a
17  sanction, is the production of the records, and an extension
18  of time to complete these two tasks in discovery, and an
19  extension of time in order to respond to their dispositive
20  motion.
21        Thank you, Your Honor.
22        THE COURT:  All right.  Mr. Perling.
23        MR. PERLING:  May it please the Court.  If I might
24  introduce myself, Lewis Perling, of course, on behalf of
25  Equifax.  I'm here from Atlanta, Georgia, and we are not in
```

Exhibit 34
Page 10

11

```
 1  counsel on behalf of Equifax and we handle their entire book
 2  of litigation in this area.
 3          THE COURT:  So, I take it you are very familiar with
 4  what the Federal Rules of Civil Procedure say?
 5          MR. PERLING:  Very much so, Your Honor, as well as
 6  familiar with the Plaintiff's --
 7          THE COURT:  Well, why don't you start out then by
 8  explaining to me why you violated the Federal Rules of Civil
 9  Procedure so extensively in the deposition that occurred in
10  August.  Why don't you start with that?
11          MR. PERLING:  Your Honor, it's not certainly my
12  position that we violated the -- that I violated the --
13          THE COURT:  Well, how did you not violate them when
14  you made those speaking objections page after page?  Tell me
15  that, sir.  You explain why you didn't violate them?
16          MR. PERLING:  Your Honor, the speaking objections
17  were simply explanations that I was attempting to --
18          THE COURT:  Those are expressly prohibited, Mr.
19  Perling, don't give me that kind of talk.  I want to know why
20  you violated the Rules, sir?
21          MR. PERLING:  I have no explanation for that.
22          THE COURT:  Well, I don't either, so don't get up
23  there telling me something that is just false.  Now, you swore
24  under oath that you read the local rules.  Why did you violate
25  the local Rule 30 then in August, tell me that?
```

Exhibit 34
Page 11

12

```
 1            MR. PERLING:  I have no explanation that would
 2   satisfy the Court.
 3            THE COURT:  Well, I tell you what, sir, let me tell
 4   you, let's cut to the chase.  I am ordering you to produce
 5   witnesses who are responsive to every subject matter that has
 6   been put in the notice for deposition by duces tecum.  You
 7   shall notify Mr. Szwak of the dates, and there shall be at
 8   least five dates that they are available within the next 21
 9   days, and they shall appear at his office in Shreveport,
10   Louisiana, and your client shall pay for the original cost of
11   the deposition transcript.
12            They -- you shall produce a witness as the rule
13   requires who is fully capable of responding to every matter in
14   the notice.  They do not have to have personal knowledge,
15   other than knowledge that they could gain by looking at the
16   records.
17            You shall produce within ten days of today's date
18   all of the documents requested in the subpoena duces tecum
19   arranged in the order, in the categories in which they are
20   identified in the duces tecum to Plaintiff's office.  That
21   includes those that are stored by electronic means as the
22   rules have provided since 1970, all of these screens, frozen
23   screens.
24            You shall, in addition, as a separate group of
25   documents furnish a copy of everything that each witness has
```

Exhibit 34
Page 12

```
 1  reviewed in these previous depositions, and they shall be
 2  identified by group as to which witness identified them, and
 3  they shall be given the date that they were identified, and
 4  that shall all be produced within ten days of today's date to
 5  Plaintiff's counsel.
 6          Now, are we beginning to get the picture that you
 7  are going to comply with the Federal Rules of Civil Procedure,
 8  and you are going to comply with the rules of this Court, do
 9  you understand that?
10          MR. PERLING: I do understand, Your Honor.
11          THE COURT: Well, why didn't you understand it
12  before, that's what has got this Court upset. I'm obviously
13  upset with this kind of -- I do not tolerate what you have
14  done. You have got a couple of lawyers in that nice, big law
15  firm of yours that are outstanding trial lawyers. Miles
16  Alexander, a Fellow of the American College of Trial Lawyers.
17  Susan Cahoon, is that the way you say that?
18          MR. PERLING: Cahoon is correct, Your Honor.
19          THE COURT: All right. One of the few women Fellows
20  of the American College of Trial Lawyers. If they knew -- if
21  they know that you are conducting yourself in the United
22  States District Court in this fashion, in violation of the
23  rules and in violation of the oath that you took, I would
24  think they would do something. So, I'm going to direct that
25  you discuss it with one or both of them and report to me that
```

Exhibit 34
Page 13

14

```
 1  you have discussed it with those outstanding folks, who set a
 2  quality of practice that should be followed by anyone in their
 3  firm.
 4          Now then, let me tell you what is going to happen.
 5  I'm sanctioning you to the extent that you are going to pay
 6  for the original copy of the transcript, and I am sanctioning
 7  your client to the extent that they are going to produce the
 8  witnesses at Mr. Szwak's office.  Those are the sanctions.
 9          Now, if your client continues to fail and refuse, I
10  will increase the sanctions, but that is about the least
11  possible sanction that I believe that I will issue at this
12  time.  I will not award attorney fees.  But let me tell you
13  that the next sanction, if your client fails to comply with
14  this sanction, will be even more severe.  It will be more in
15  the nature of striking defenses, and if that doesn't get their
16  attention, then we will just enter a Judgment of Default on
17  liability, and let the jury in this case, over there, decide
18  how much they are entitled to.  Now, do you understand what is
19  going to happen if you don't start complying with the rules?
20          MR. PERLING:  I understand completely, Your Honor.
21          THE COURT:  All right.  Now, that is as to your
22  client.  Now, I am ordering you personally to start complying
23  with the rules of this Court and with the Federal Rules of
24  Civil Procedure in the manner in which you conduct
25  depositions.  You are on probation, sir.  If you fail,
```

Exhibit 34
Page 14

15

1 is two things going to happen. If you disobey this Court's
2 order, I will bar you from the practice of law in the Eastern
3 District of Texas as a pro hac vice, and expressly provide
4 that you or any member of that fine law firm cannot practice
5 -- be admitted to practice administratively, as you were, but
6 would have to come before -- file an application to be
7 reviewed by this Court. Now, if you want that kind of
8 sanction on your record, then all you have to do is not comply
9 with the rules.

10     Additionally, since I have ordered you specifically,
11 and if you fail to comply, I will still have jurisdiction over
12 your person, and I will order you back over here for a
13 contempt hearing, and when I do those kinds of things, I can
14 assure you you will need to bring your toothbrush. I do not
15 tolerate your kind of behavior, sir. I have read these
16 transcripts, and it is very upsetting to know that a lawyer
17 with your level of experience, that's national counsel, would
18 go around in a United States District Court conducting
19 yourself in the manner in which you have conducted yourself in
20 this case.

21     Now, are we clear?
22     MR. PERLING: We are clear, Your Honor.
23     THE COURT: I would call your attention to the fact
24 that you have been in violation of this Court's Order since
25 about the end of May -- no, about the first week in June. I

Exhibit 34
Page 15

1  entered an Order, a Discovery Order in this case in April that
2  gave you 45 days to produce the relevant documents in this
3  case. We all sat in this courtroom, and you or somebody on
4  your client's behalf agreed that this case would be developed
5  under mandatory disclosure. And you have totally ignored that
6  Order. So, it is not like this is your first time around
7  here, as far as I'm concerned. I mean, we come into Court, we
8  have a Scheduling Conference, we all discuss the fact that we
9  are going to develop the case under mandatory disclosure,
10 nobody objected to it, I enter the Order, and then you and
11 your client choose to totally ignore it. And you have no
12 explanation, and I certainly don't know what possible
13 explanation somebody with your experience and level -- in a
14 law firm of this quality would come into Court, I just don't
15 understand. It just doesn't make any sense to me. And you
16 offer no explanation.
17         Now, is there anything else that we need to take up
18 here today?
19         MR. PERLING: The only other thing I would ask the
20 Court is to clarify the schedule, and maybe I could do that
21 with the clerk, as to where the current trial and other
22 deadlines lie, because I have it on my calendar for earlier.
23         THE COURT: Well, right now I am going to extend the
24 discovery deadline until the end of February. I will extend
25 the -- I am going to reset the case, and I will get you

Exhibit 34
Page 16

17

1  new Order. I am going to reset the case in June. Mr. Szwak,
2  do you have any dates in June that you -- you got any pre-paid
3  vacation?
4           MR. SZWAK: No, sir, June is fine.
5           THE COURT: Okay. We will pick a jury on the first
6  Monday in June. I will send you additional dates for
7  dispositive motions. You have got 30 days after the
8  completion of discovery, Mr. Szwak, to respond to the pending
9  motion, dispositive motion of the Defendant Equifax.
10          The answers to interrogatories are due ten days from
11 today and they shall be full and complete and in full
12 compliance with the Federal Rules of Civil Procedure.
13          End of February sufficient time to complete the
14 discovery?
15          MR. SZWAK: Yes, sir, I hope so, depending on the
16 practice of the Court in Kansas with regard to Monogram, but I
17 can report back to the Court on that.
18          THE COURT: Well, perhaps if Monogram were given the
19 outcome of this hearing, it won't be necessary to have a
20 Motion to Compel. However, if it is, you just need to get
21 your motion filed and request a hearing.
22          I am sorry that I have been unavailable, however, we
23 had a little problem called redistricting in Texas, and I
24 caught that case, so I have been in Austin for most of the

Exhibit 34
Page 17

18

1   Are there any other matters that I have not
2   discussed?
3        MR. SZWAK: No, sir, I don't believe so.
4        THE COURT: I am not going to enter any more general
5   orders, you are under an Order to produce those relevant
6   documents, and you are under an Order to produce exactly what
7   is called for in the subpoena duces tecum.
8        The only time you ever instruct a witness not to
9   answer is if it's a privileged matter. And you can waive
10  that, you know, with your privilege, Counselor, by discovery
11  abuse, although this Court weighs privilege as sacrosanct, but
12  if you assert a privilege, it better be -- you got to have a
13  good faith basis. You understand that?
14       MR. PERLING: I understand, Your Honor.
15       THE COURT: Okay. We are in recess.
16       COURT SECURITY OFFICER: All rise.
17       (Court adjourned.)
18         *    *    *    *    *    *
19
20
21
22
23
24

Exhibit 34
Page 18

```
                                                                    19

1

2

3                          CERTIFICATION

4

5          I HEREBY CERTIFY that the foregoing is a true and

6   correct transcript from the stenographic notes of the

7   proceedings in the above-entitled matter to the best of my

8   ability.

9

10

11

12   [signature: Susan Simmons]              3-2-04
     SUSAN SIMMONS, CSR                       Date
13   Official Court Reporter
     State of Texas No.:  267
14   Expiration Date:  12/31/04

15

16

17

18

19

20

21

22

23

24
```

Exhibit 34
Page 19