1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF OREGON

3    APRIL HETTMAN,                )
                                   )
4            Plaintiff,            )    CV-08-1174-AC
                                   )
5        vs.                       )    June 1, 2010
                                   )
6    EQUIFAX INFORMATION SERVICES  )    Portland, Oregon
     LLC,                          )
7                                  )
             Defendant.            )
8

9

10              TRANSCRIPT OF PROCEEDINGS

11          BEFORE THE HONORABLE JOHN V. ACOSTA

12     UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13

14                     APPEARANCES

15   FOR THE PLAINTIFF:    Justin M. Baxter (via telephone)
                           Baxter & Baxter, LLP
16                         8835 SW Canyon Lane, Suite 130
                           Portland, Oregon  97225
17
     FOR THE DEFENDANT:    Keasha Ann Broussard
18                         King & Spalding LLP
                           1180 Peachtree Street NE
19                         Atlanta, Georgia  30309

20

21                         Kerry Shepherd
                           Markowitz Herbold
22                         1211 SW Fifth Avenue, Suite 3000
                           Portland, Oregon  97204
23

24   COURT REPORTER:       Dennis W. Apodaca, RMR
                           1000 SW Third Avenue, Room 301
25                         Portland, OR  97204
                           (503) 326-8182

Exhibit 35
Page 1

```
 1                        (June 1, 2010)

 2                     P R O C E E D I N G S

 3            (Open court:)

 4            THE COURT:  Mr. Baxter, where are you.

 5            MR. BAXTER:  I apologize, Your Honor.  When I

 6   spoke to your law clerk on Friday, we had discussed

 7   setting a phone conference.  I misunderstood; I apologize.

 8            THE COURT:  Well, I'm just going to tell you

 9   that there are judges still sitting in this court that

10   would deny your motion outright because you didn't show up

11   for it.

12            MR. BAXTER:  I understand.

13            THE COURT:  So in the future, in the face of any

14   possible ambiguity, make sure to clarify what the order

15   requires.  Ms. Broussard, can you hear me?

16            MS. BROUSSARD:  Yes, I can hear you, Your Honor.

17            THE COURT:  The first question I have for you is

18   whether there is any objection on the defendant's part to

19   the relevancy of the information Mr. Baxter seeks on

20   behalf of his client?

21            MS. BROUSSARD:  Yes.  There are some objections

22   on the basis of relevance, Your Honor.

23            THE COURT:  All right.  Well, the reason I asked

24   the question is because if there weren't, then it really

25   comes down to a question of logistics and equities, but I
```

Exhibit 35
Page 2

```
 1    suppose I didn't see anything filed by you on behalf of
 2    the defendant -- that isn't necessarily required,
 3    particularly on a quick setting like this.  But it seems
 4    to me that if the information Mr. Baxter seeks on behalf
 5    of the plaintiff is information that the defendant's
 6    30(b)(6) designee could not provide at deposition, but
 7    should have been able to provide at deposition, I have
 8    difficulty understanding how the information Mr. Baxter
 9    wants is not relevant.  So perhaps you should explain
10    that.
11             MS. BROUSSARD:  Well, I guess some of the -- not
12    all of the information he seeks is not relevant.  But the
13    information that is relevant, the 30(b)(6) witness would
14    be able to provide that at the deposition.
15             THE COURT:  Let me make sure I understand.
16    First, there has already been at least a partial
17    deposition of the 30(b)(6) representative; is that
18    correct?
19             MS. BROUSSARD:  That's correct.
20             THE COURT:  Is it also correct that the
21    information contained in the interrogatories that are at
22    issue here is information -- I'm sorry -- information that
23    the 30(b)(6) representative could not provide at the first
24    deposition?
25             MS. BROUSSARD:  Well, further investigation
```

Exhibit 35
Page 3

1    would need to be conducted.  So some of it was not

2    information that she could just recite off the top of her

3    head.  There are some codes that needed to be decoded and

4    that would required further investigation.

5         THE COURT:  Well, when a 30(b)(6) deposition

6    notice is drafted and presented -- and I haven't seen it

7    so I can't say -- but the rules require that the topic or

8    topics on which examination shall be conducted be

9    specifically identified and described were these codes

10   within the description in the 30(b)(6) notice.

11        MS. BROUSSARD:  I would have to look at the

12   original notice, Your Honor, to determine that.

13        THE COURT:  Well, I'm just going to cut to the

14   chase.  I have a concern here.  My concern is the 30(b)(6)

15   deposition designee either was not properly prepared for

16   the deposition or was not the person who should have been

17   designated.  And if she is knowledgeable on some of the

18   topics, then it was incumbent upon the defendant to

19   designate additional individuals who could speak

20   collectively to all of the topics in the 30(b)(6) notice.

21   And that's my concern; that that wasn't done.  What can

22   you tell me about that?

23        MS. BROUSSARD:  From what I recall -- I mean,

24   the witness was the proper person, in accordance to the

25   topics that were identified in the notice, and she was

Exhibit 35
Page 4

prepared.  But it looks like these interrogatories related

to information that -- I guess additional information that

came out during this first deposition that she would be

able to speak to in a second deposition.

THE COURT:  I am sorry.  I'm not sure I followed

that.  Do you mean that the interrogatories that were

later proceed pounded were on matters raised in the first

deposition but weren't covered in the notice?

MS. BROUSSARD:  Again, I apologize, Your Honor.

I would have to retrieve that first deposition notice to

compare it to these interrogatories to see if that is

indeed the case.

THE COURT:  When did that deposition occur?

Mr. Baxter, when did the Willis deposition

occur?

MR. BAXTER:  Your Honor, I'm pulling it up right

now.

MS. BROUSSARD:  I believe it was early February,

Your Honor.

MR. BAXTER:  I have got the transcript in front

of me.

THE COURT:  And what was the date, Mr. Baxter?

MS. BROUSSARD:  I think it was February 4th.

MR. BAXTER:  February 4th, 2010.

THE COURT:  All right.  Mr. Baxter, I have a

Exhibit 35
Page 5

1  question for you:  As far as I can tell, these

2  interrogatories, which seem to be the subject of your

3  motion to compel, were served on April 22nd.

4          MR. BAXTER:  Correct, Your Honor.

5          THE COURT:  Why did you wait two and a half

6  months after the Willis deposition to serve these

7  interrogatories, particularly when there could be no doubt

8  by my prior ruling that the date for the close of

9  discovery would not be extended again?

10         MR. BAXTER:  Your Honor, we set the new Willis

11 deposition shortly after Your Honor granted the last

12 extension.

13         THE COURT:  That's not my question.  My question

14 is, if you knew in early February that Willis was unable

15 to provide certain information relevant to your client's

16 case, why did you wait two and a half months to send these

17 interrogatories?

18         MR. BAXTER:  I guess my concern was, when I knew

19 there was going to be a second Willis deposition, I wanted

20 to make sure she did the research.  At the time of the

21 first deposition, she testified that she could look up the

22 codes and tell me who the subscribers were that correlated

23 to each code.  So my plan was to ask her at the second

24 deposition to do that, to tell me who the corresponding

25 subscribers were.  But after we set up the continuation

Exhibit 35
Page 6

1  deposition, I thought the prudent thing to do would be to

2  issue interrogatories to ensure that she would do the

3  research before the deposition took place.

4         THE COURT:  She was deposed in early February?

5         MR. BAXTER:  Correct, Your Honor.

6         THE COURT:  And there has only been the one

7  deposition so far?

8         MR. BAXTER:  Correct.

9         THE COURT:  I am just going to make an

10  observation.  I am not convinced that the reason for

11  waiting to serve these interrogatories is a sufficient

12  reason to put us all here today talking about a motion to

13  compel on an expedited basis because the close of

14  discovery is nearly upon us.  I mean, a motion to compel

15  may have been necessary anyway, Mr. Baxter, but it seems

16  to me that the primary reason for it is the defendant's --

17  from your standpoint -- failure to give you information in

18  time for his deposition, which I understand is scheduled

19  for Thursday.  And today is Tuesday.

20         Ms. Broussard, talk to me about your concerns of

21  relevancy.

22         MS. BROUSSARD:  Well, for instance,

23  interrogatory No. 3 asks for a certification, if any, that

24  Equifax obtained from Target National Bank, which is a

25  third party in this case regarding the completeness and

Exhibit 35
Page 7

1  accuracy of information it reported to plaintiff.  It is

2  Equifax's position that that's not relevant because, based

3  on the information -- based on Ms. Willis' testimony in

4  the deposition, it doesn't appear that that's an issue,

5  because plaintiff's claim was a re-insertion claim; that

6  Target reinserted information.  I believe that, based on

7  Ms. Willis' deposition, there is no evidence that Target

8  reinserted this account information; therefore, that

9  requested certification would not have been necessary.

10       THE COURT:  Well, a starting point, because we

11  are in the discovery phase, is not relevancy but whether

12  the information bears on a claim or defense in the case.

13  So strict relevancy isn't absolutely required, and it

14  doesn't necessarily have to be admissible.

15       I suppose that if Mr. Baxter's concern is

16  whether there was some -- allegedly -- re-insertion of

17  this information by Target National Bank and Ms. Willis

18  has testified that there wasn't -- Ms. Willis is not

19  employed by Target National Bank, am I correct?

20       MS. BROUSSARD:  That's correct, Your Honor.

21       THE COURT:  It seems to me that the worst that

22  happens is the defendant responds no such documents exist,

23  and then Mr. Baxter has his answer.  I'm not sure at this

24  stage Ms. Willis can foreclose further inquiry by talking

25  about a matter pertaining to another bank with which he is

Exhibit 35
Page 8

1  not employed.  I'm not sure that does it.

2        Do you have any other concerns about relevancy,

3  or I should say discoverability about the information

4  called for in these interrogatories?

5        MS. BROUSSARD:  Also, in interrogatory No. 5,

6  Your Honor, plaintiff is asking Equifax to identify every

7  person, business or entity that received a credit file

8  attributed to plaintiff in 2005.  What happened here,

9  Your Honor, was it appears that Equifax's system created

10  some fragmented files of plaintiff's main file, and these

11  fragmented files, which aren't a complete credit file,

12  there were some promotional inquiries on the file.

13        A promotional inquiry is when a third party

14  obtains a consumer's name because that consumer meets

15  certain requirements, whether it is a credit score or

16  whatever reason.  Those promotional inquiries appear on

17  those frag. files and Equifax would object that in many

18  instances these fragmented files -- a complete fragmented

19  file did not go out to these parties that made the

20  promotional inquiries; therefore, Equifax would object

21  that the credit file isn't the correct terminology for all

22  of the inquiries that were made into plaintiff's credit

23  files, and we just wanted to clarify that.

24        THE COURT:  Mr. Baxter, what are you after by

25  the question in interrogatory No. 5?

Exhibit 35
Page 9

1      MR. BAXTER:  Fundamentally just the businesses

2  that received credit reports attributed to plaintiff.  We

3  know that a credit report -- or some credit data with the

4  false Target account went to subscribers throughout 2005

5  and 2006.

6      THE COURT:  It seems to me -- that makes sense

7  to me.  It also makes sense to me that the defendant would

8  not have distributed a fragment file to a third party

9  because, by definition, it is not a complete file.

10     Ms. Broussard, is that an accurate statement?

11     MS. BROUSSARD:  Yes.  And then also credit

12  report has a different definition, different connotation.

13  A credit report implies that a complete file of a

14  consumer.  So it is Equifax's position that these

15  fragmented files were not actually credit reports.

16     THE COURT:  Okay.  Now, wait a minute.  Here is

17  what I want to know:  In fact, here is what I will say:

18  If any of these fragmented files were distributed to third

19  parties, whether or not semantically they may fall within

20  the definition of a credit report, if they were

21  distributed, then for purposes of discovery the defendant

22  has to produce them.

23     So my question to you is, were any fragment

24  files produced outside of the confines of your client's

25  operation?  Did they go to third parties?

Exhibit 35
Page 10

1      MS. BROUSSARD:  Not the complete frag file.  But

2   there is a distinction between a promotional inquiry, a

3   hard inquiry and an account review inquiry.

4       A promotional inquiry doesn't transmit an entire

5   file.  It may only transmit the plaintiff's ID

6   information, the name and the address, but it doesn't show

7   the actual account information reporting on that frag.

8   file at the time.  Equifax is willing to and I believe it

9   has already produced this information in response to the

10  first interrogatories on our full file.  Whenever hard

11  inquiries or account review inquiries are made, Equifax

12  has identified the subscribers to which the information

13  has been transmitted.  So there is a distinction between

14  promotional inquiries posing on these fragmented files.

15      THE COURT:  What's contained in a promotional

16  inquiry?

17      MS. BROUSSARD:  It depends on the subscriber

18  that is requesting information, but it could only be a

19  name or a name and address.  Typically when a consumer

20  gets a pre-approved offer of credit in the mail, that's

21  due to -- you know -- a lot of times a promotional

22  inquiry.  That subscriber only obtains the name, the

23  address, possible a credit score.  But that subscriber did

24  not receive a full credit file.

25      THE COURT:  Let me ask a question.  Let's assume

Exhibit 35
Page 11

that I am "Mega Merchant, Inc." and I make a promotional

inquiry to your client, because I want to send them my

in-house credit card or I want to send them some

promotional material.  If I make that inquiry, what do I

get back from your client?

MS. BROUSSARD:  It really depends on what

information.  It can vary from subscriber to subscriber,

but we do know that they do not get the full file.  They

may --

THE COURT:  So if they don't get the full file,

are there inquiries which result in Equifax providing

information that includes a credit score?

MS. BROUSSARD:  Yes.  That involves audit

trails, which have been produced in this case, but the

audit trails are only triggered by the hard inquiries.

Those have been produced to plaintiff in this case.

THE COURT:  You have made a distinction between

hard inquiries and promotional inquiries.  Am I correct?

MS. BROUSSARD:  Yes.  And also account review

inquiries.

THE COURT:  Are you saying that there could be

instances in which Equifax sent information in response to

a promotional inquiry which included the plaintiff's

credit score, but that you have no way of tracking if you

did that?

Exhibit 35
Page 12

1          MS. BROUSSARD:  Yes, that's correct.  But --

2    well, it depends on, again, what information that

3    subscriber was requesting because the subscribers don't

4    always -- I guess it is a little hard to explain.  If, for

5    instance, ABC Bank wants credit information regarding

6    consumers whose credit scores are between 700 and 750,

7    that information is provided to them so that the credit

8    score wouldn't be provided.  It is just that all of those

9    consumers that fall within those a parameters, the ID

10   information would be provided to ABC Bank and promotional

11   inquiries would post on all of those consumers' credit

12   files.

13          THE COURT:  Here is the bottom line question for

14   me:  With respect to these fragment files, which may have

15   been produced in response to promotional inquiries as

16   opposed to hard inquiries, is there a feasible and

17   practical way to retrieve any of that information to

18   determine where it was sent?

19          MS. BROUSSARD:  Each subscriber has furnished

20   their information to Equifax.  Banks, finance companies,

21   et cetera are all assigned subscriber codes.  Equifax, to

22   the best of its ability, can decode those subscriber codes

23   so they can assign the name of the furnisher to the code.

24          THE COURT:  Is that a yes to my question?

25          MS. BROUSSARD:  That's a yes, Your Honor.

Exhibit 35
Page 13

1    THE COURT:  All right.  If I were to order your

2  client to do that, how long would it take?

3    MS. BROUSSARD:  Well, it appears -- and you may

4  know, Mr. Baxter.  I believe there are several, if not --

5  I don't know upwards of a hundred.

6    MR. BAXTER:  I think that's right.

7    THE COURT:  Ms. Broussard, is there any way to

8  determine -- here is where I think I am going to end up.

9  If your clients sent any information to third parties that

10  included the plaintiff's credit score, then I'm going to

11  require them to tell Mr. Baxter who those third parties

12  were.  If the information didn't include a credit score,

13  then I am not going to make your client retrieve it.

14    MS. BROUSSARD:  All right.  My response to your

15  question might have been a bit confusing, Your Honor.  But

16  to clarify, the score doesn't go out.  The furnisher sets

17  the parameters of the consumers that it wants to target.

18  Those consumers that fall within those parameters, that's

19  how that credit information is released or is sent to

20  those furnishers.

21    So they don't get a score.  They may say:  You

22  know, I want all consumers whose scores are under 650 in

23  order to try to target them for some kind of special

24  sub-prime financing.  Therefore, the ID information on

25  those consumers will be transmitted to those furnishers.

Exhibit 35
Page 14

1    It is not just the score.  It is just whether those

2    consumers meet the specified parameters set by those

3    furnishers.

4            THE COURT:  It seems to me then by setting

5    parameters at certain levels -- let's say by credit score

6    level -- and if, as plaintiff alleges here, her credit

7    score was wrongly set, she would be excluded perhaps from

8    certain promotional inquiries which could include offers

9    of credit from any of these furnishers.  Am I correct?

10           MS. BROUSSARD:  That's correct, Your Honor.  I

11   probably relied a little too heavily on the example about

12   credit scores.  It can be other parameters as well.  It

13   may be a certain age group or a certain geographical part

14   of the country.  It just depends on what parameters that

15   particular furnisher sets in doing these promotional

16   inquiries, and that's not something that Equifax can

17   readily determine just by looking at the scans.

18           THE COURT:  I understand that.

19           I am going to go back to the initial question on

20   this topic, which I think you answered in the affirmative.

21   It is practical and feasible to retrieve information

22   showing where fragment files were sent in response to

23   promotional inquiries; is that correct?

24           MS. BROUSSARD:  Well, Your Honor, to respond to

25   your question, and I don't mean to split hairs, but the

Exhibit 35
Page 15

1    actual fragmented file would not have been sent.  It would

2    have just been the identity of that consumer.  So it would

3    have been the name or the address.

4           THE COURT:  I think I did understand that but --

5    yeah, I think I did understand that.

6           MR. BAXTER:  Your Honor --

7           THE COURT:  I still want to know where they

8    went.  I think what you told me the last time is that your

9    client could determine that.

10          MS. BROUSSARD:  Yes.

11          THE COURT:  Mr. Baxter, you want to say

12   something?

13          MR. BAXTER:  Yes, Your Honor.  I think the task

14   is actually simpler than we are discussing.  I have a

15   series of documents, several hundred documents from

16   Equifax.  They have a series of numerical codes.  Those

17   codes correspond with businesses, subscribers.  I am just

18   looking for a list of each subscriber that is listed on

19   the documents that correspond with each code.

20          THE COURT:  All you want is the name -- you have

21   a number, but you don't know who that is.  Is that it?

22          MR. BAXTER:  Precisely.  And ms. Willis was able

23   to identify, I think, three subscribers that were written

24   out longhand on the documents.  She said the other ones

25   that were more heavily coded, she would have to look them

Exhibit 35
Page 16

1  up.  So that's information that Equifax has.

2          THE COURT:  So with respect to interrogatory

3  No. 5 then, all you are looking for is the code

4  translation; translate the code into a business entity by

5  name.  Correct?

6          MR. BAXTER:  Correct.

7          THE COURT:  Well, Ms. Broussard, it seems like

8  what Mr. Baxter wants is much simpler than what I was

9  talking to you about.  How quickly can your client do

10  that?

11          MS. BROUSSARD:  In five business days.

12          THE COURT:  Well, the continuation deposition is

13  Thursday.

14          MS. BROUSSARD:  Right.  Your Honor, I apologize.

15  We have got back to back trials.  These witnesses have

16  been just completely bogged down and had their backs

17  against the wall in other matters.

18          THE COURT:  Well, I am sensitive and sympathetic

19  to that, but I think, by my count, we are on our sixth

20  discovery extension.  This case has been around for almost

21  two years.  In this district two years is a long time and

22  discovery isn't even over yet.  I mean, discovery usually

23  finishes in this district in a year or so.  We should at

24  dispositive motions by now and looking at trial dates.

25          I appreciate that things happen in cases that

Exhibit 35
Page 17

1   lawyers can't anticipate; that witnesses have unexpected

2   complications and such.  But I will just tell you that the

3   record reflects at least several requests, in part,

4   relying on delays caused by scheduling by one or both

5   parties or their witnesses or representatives,

6   particularly including what appears to be

7   on-again/off-again settlement discussions.

8            So here is what I don't want:  I don't want this

9   deposition to convene on Thursday and the information that

10  Mr. Baxter needs to ask Ms. Willis is yet to be produced.

11  I don't know, Mr. Baxter.  Maybe I'm making too much of

12  this; maybe you don't need the information that

13  interrogatory 5 calls for in order to conclude the Willis

14  deposition.  Do you or don't you?

15           MR. BAXTER:  If I know that the information is

16  coming through an interrogatory response without an

17  objection, then the interrogatory response would be

18  sufficient.  I could complete part of the deposition that

19  has to be done orally without that response.

20           THE COURT:  Is there any of the information

21  called for in this second set of interrogatories that you

22  need for the deposition on Thursday?

23           MR. BAXTER:  I'm looking back through the

24  requests, Your Honor.  Your Honor, 1 through 5, I could

25  complete the deposition without having those answers.  6,

Exhibit 35
Page 18

1    I think as well, we could complete the deposition.  The

2    only thing I don't want to have happen is what has

3    happened two times already in this case, which is the

4    night before a deposition Equifax produces a significant

5    number of new documents.  If I have a representation that

6    I am not going to get another 200 pages right before the

7    deposition, then I can pass on 6 as well.  I just want to

8    make sure there aren't any more credit files or fragment

9    files that I haven't seen.

10          THE COURT:  Ms. Broussard, do you know the

11   answer to that question?

12          MS. BROUSSARD:  That's right, Your Honor.  There

13   were a significant number of documents that were produced.

14   That was one time in February, primarily because the

15   client needed to search for them and wanted to error on

16   the side of being over-inclusive.

17          Also, these interrogatories relate to

18   allegations in plaintiff's second complaint that he has

19   recently filed involving the same parties and the same

20   claims, except there is some additional claims added to

21   that second lawsuit as well.  So I was assuming that

22   plaintiff will conduct discovery in that second lawsuit as

23   well.

24          THE COURT:  Second lawsuit involving the same

25   parties?

Exhibit 35
Page 19

1      MS. BROUSSARD:  Yes.

2      THE COURT:  Or amended complaint?

3      MS. BROUSSARD:  No.  It is not an amended

4  complaint.  It is a second lawsuit.

5      THE COURT:  Was it filed here?

6      MS. BROUSSARD:  Yes, I think it is before

7  Judge --

8      MR. BAXTER:  -- Hubel, Your Honor.

9      MS. BROUSSARD:  -- Hubel.

10     THE COURT:  Well, that's odd.

11     MR. BAXTER:  There were newly discovered claims

12  that we discovered well into the case, and I asked counsel

13  if they would stipulate to the inclusion of those claims

14  in this case, and I just never got a response.  So after

15  waiting and waiting, we didn't want to let new claims pass

16  based on the discovery data of the Fair Credit Reporting

17  Act.  We filed essentially a placeholder complaint but,

18  yes, a new lawsuit.

19     THE COURT:  So all right.  We are digressing

20  momentarily.  But there is a second separate lawsuit

21  between the same parties filed in this court assigned to a

22  different judge, correct?

23     MR. BAXTER:  Yes, Your Honor.

24     THE COURT:  And do the claims in that case arise

25  out of the same basic facts as the claims which give

Exhibit 35
Page 20

1  rise -- as the claims alleged in this case assigned to me?

2          MR. BAXTER:  Not really.  The complaint reads

3  similarly because the plaintiff is Ms. Hettman, and the

4  defendant is Equifax.  But the gravamen of those claims

5  are events and violations of the Act that are not included

6  in this case because the Fair Credit Reporting Act has a

7  discovery provision.

8          THE COURT:  Yes.

9          MR. BAXTER:  So it would be only claims not

10 before Your Honor.

11         THE COURT:  All right.  Well, I suppose for what

12 it is worth, Mr. Baxter, that any discovery in that case

13 will have to be in that case and not in this case, and I

14 don't understand that that's what you are trying to do.

15 But just in the event that's your expectation, just know

16 that you will have to conduct discovery in that other case

17 separately.

18         Here is what I am going to say:  Ms. Broussard,

19 it seems to me that Mr. Baxter has indicated that, with

20 respect to the deposition currently scheduled for this

21 coming Thursday, he doesn't need the answers to these

22 interrogatories in order to complete that deposition.

23         Mr. Baxter; is that correct?

24         MR. BAXTER:  Correct, Your Honor.

25         THE COURT:  And that representation in turn is

Exhibit 35
Page 21

1   based, Ms. Broussard, on your representation that there

2   isn't going to be any new documents produced between now

3   and Thursday morning.

4          Ms. Broussard, is that correct?

5          MS. BROUSSARD:  Well, I am going have my client

6   check just to make sure that there isn't anything else out

7   there.  But in terms of the volume, I thought that was the

8   distinction being made.  I just want to make sure that

9   Equifax discloses all the information that it has on

10  Ms. Hettman.  So if a few documents are located, I just

11  want to make sure that I'm not foreclosed from producing

12  those to plaintiff.

13         THE COURT:  Well, first, you should check with

14  your client to make sure there isn't anything else by way

15  of discoverable documents pertaining to Ms. Hettman's

16  claims that hasn't yet been produced.  That's always

17  prudent, particularly in advance of depositions.  But I'm

18  just going to make an observation, Ms. Broussard, to which

19  you need not respond because no response is expected or

20  needed.

21         I have had you in a couple of other cases and

22  found you to be reasonable and professional.  So I am just

23  going to say that if your client is not sufficiently

24  attentive to the requirements of complying with the rules

25  in federal court for the discovery of information, I can

Exhibit 35
Page 22

1    remedy that.  If that's what is needed here to avoid

2    midnight or eleventh-hour production of documents, which

3    should have been produced long ago, I can do that.

4          So convey to your client that the Court will be

5    watching to see if documents other than a few, if any at

6    all, managed to be produced Wednesday night in advance of

7    the Willis deposition.  Because if there is another great

8    volume of documents, I am going to be pretty unhappy.

9    Because if Mr. Baxter claims he now needs to take a third

10    installment of the Willis deposition for that reason,

11    there will likely be consequences.

12          I appreciate Equifax has other cases in other

13    districts around the country, but compliance with the

14    rules is required.  I was never ever a fan, as a lawyer,

15    of the production of voluminous documents on the eve of an

16    important deposition.

17          If that is your client's pattern -- and I'm not

18    saying anybody is doing anything deliberately here -- it

19    will have to change, at least in my court.  So however you

20    choose to convey that to your client, I will leave to you,

21    because I have confidence that you will be able to do so

22    convincingly.

23          But it seems, at least with respect to the

24    Willis deposition on Thursday, that there is no immediate

25    need to respond to these interrogatories.  In other words,

Exhibit 35
Page 23

1   the deposition can go forward without answers to these six

2   interrogatories.

3          So the question now is, Ms. Broussard, when do

4   you believe you can provide answers to these

5   interrogatories for Mr. Baxter?

6          MS. BROUSSARD:  I can provide these on -- Monday

7   would be the fifth business day.

8          THE COURT:  All right.  Mr. Baxter, did you hear

9   that?

10          MR. BAXTER:  I did.

11          THE COURT:  Any concerns about that?

12          MR. BAXTER:  No, that's acceptable to me.

13          THE COURT:  All right.  It seems to me -- hang

14   on just a minute.  Mr. Baxter, before we click off, and I

15   don't want to misstate, but I'm looking at your motion

16   here.  I have a recollection that you had mentioned some

17   suggestion of further deadline extensions being considered

18   by the parties.  Am I correct or am I mistaken?

19          MR. BAXTER:  I had not, Your Honor.

20          THE COURT:  All right.  So right now we're on

21   track with the current deadlines.  Am I correct about

22   that?

23          MR. BAXTER:  Yes.

24          THE COURT:  Ms. Broussard, am I correct?

25          MS. BROUSSARD:  Yes, Your Honor.

Exhibit 35
Page 24

1      THE COURT:  Okay.  So, Mr. Baxter, Ms. Broussard

2  says you will have your answers by Monday.  To the extent

3  that I need to grant your motion to compel, it is granted,

4  and the defendant has until Monday to answer the second

5  set of interrogatories.

6      There seems no issue with respect to Ms. Willis'

7  deposition going forward on Thursday with respect to these

8  interrogatories or with respect to any issue involved

9  regarding questions you intend to ask her.  It seems that

10  she will be prepared to respond.

11      With respect to your motion, I think that covers

12  the issues raised by the motion.  Is there anything that

13  you intended to raise by the motion that we haven't

14  resolved?

15      MR. BAXTER:  No, Your Honor.

16      THE COURT:  Ms. Broussard, as long as we're on

17  the phone, is there anything that we need to take up at

18  this time, whether it concerns the purpose of the motion

19  or anything else involving discovery?

20      MS. BROUSSARD:  I guess the only issue that I

21  would have is, in the second lawsuit, whether there would

22  be duplicative discovery would be conducted here,

23  basically getting two bites at the apple on these issues.

24      THE COURT:  Well, I suppose there is some

25  possibility of that.  I will just tell both of you that in

Exhibit 35
Page 25

this district, and I think there is even at least one

local rule that generally addresses this topic.  Related

cases often are consolidated or, if not formally

consolidated, assigned to the same judge.

You can always request that, either of you or

both of you jointly.  We sometimes do it internally for

purposes of administrative efficiency.  Just so you know,

the default is that the judge with the older case is the

judge to whom the cases are assigned, if there is some

kind of consolidation, whether administrative or formally.

So to the extent that you have a concern about

duplicative discovery, that would be one way to help

minimize it, by having one judge oversee both cases.  Of

course, if that's your preference but not Mr. Baxter's,

then you all would have to file a motion, and probably

Judge Hubel would be the one to hear it, although not

necessarily.  But it is his case that is the newer case

and probably the motion would be filed there.

MR. BAXTER:  Your Honor, we are agreeable to

that.  I just pulled up the civil filing sheet for the

second case.  We did list this case as the related case,

and we gave the docket case number.  It was always our

first intention to see the entire case get resolved at one

time.  I just couldn't get a response from Equifax whether

they would stipulate to the inclusion of the newly

Exhibit 35
Page 26

1    discovered claims.

2          THE COURT:  Ms. Broussard, I'm not going to put

3    you on spot.  All I'll do is tell you to talk to your

4    client and see what their preference is.  If you are not

5    agreeable, and Mr. Baxter doesn't wish to file a motion

6    about it, then the cases just stay where they are.  But if

7    you and your client are agreeable, you or Mr. Baxter, or

8    the two of you jointly, can let Mr. Gale know.  Basically

9    what will happen is Judge Hubel's case will be reassigned

10   to me.  That is the most likely outcome of such a request.

11          So talk to your client, and I am going to ask

12   you to let Mr. Baxter know on Monday, the same day that

13   your interrogatory answers are due.

14          MS. BROUSSARD:  I will do that, Your Honor.

15          THE COURT:  All right.  Anything else?

16          All right.  Hearing nothing, thank you for being

17   available, and we're going to sign off on this end.

18          MR. BAXTER:  Thank you.

19          MS. BROUSSARD:  Thank you, Your Honor.

20          (Recess.)

21

22

23

24

25

Exhibit 35
Page 27

1

2                              --oOo--

3

4           I certify, by signing below, that the foregoing

5    is a correct transcript of the record of proceedings in

6    the above-entitled cause.  A transcript without an

7    original signature is not certified.

8

9    _____    _____

     DENNIS W. APODACA, RMR, FCRR, RPR              DATE
10   Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 35
Page 28